UNITED STATES v. DEMPSEY.

(Circuit Court, D. Montana. September 28, 1900.)

1. ARMY—PAY OF OFFICERS—RIGHT TO COMMUTATION FOR QUARTERS.

Under section 1480 of the army regulations, which provides that "officers on duty, without troops, at stations where there are no public quarters, are entitled to commutation therefor," any suitable quarters provided by the government for the use of an officer answer the requirement for "public quarters," though not expressly built for army officers; and an officer assigned to duty as an Indian agent, and furnished a suitable building on the reservation for his quarters, without charge, is not entitled to receive commutation for quarters.

2. SAME—OVERPAYMENT OF OFFICER THROUGH MISTAKE OF LAW—RECOVERY

Where an army paymaster has paid an officer a sum as a commutation allowance through an error of law, the United States is not bound by such payment, and may recover the money so paid in a proper action, with interest from the date when the officer's accounts were settled by the treasury department, at the rate established by the laws of the state in which the action is brought.

Action by the United States to recover an alleged overpayment made to defendant as an army officer through mistake of law.

Wm. B. Rodgers, U. S. Dist. Atty.
Henry N. Blake, for defendant.

KNOWLES, District Judge. This cause has been submitted to the court upon an agreed statement of facts. The defendant, Charles A. Dempsey, at the times mentioned in the complaint herein, was a captain in the regular army of the United States, and was assigned by the president of the United States, in accordance with the power vested in him by a federal statute, to act as Indian agent for the Osage Indians. In pursuance of such assignment, he entered upon and performed the duties of the position as such Indian agent. He claimed from the government of the United States a certain sum as commutation for quarters while performing his official duties, and received from the government, through paymasters in the army, as such, the sum of $240, at different times between the 13th day of June, 1893, and the 31st day of January, 1894. It is claimed by the government in this action that this money was erroneously paid to the defendant under a mistake of law. The defendant claims that he

was justly entitled to this money under and by virtue of section 1480 of the army regulations, which reads as follows:

"Officers on duty, without troops, at stations where there are no public quarters, are entitled to commutation therefor, which will be paid by the pay department at established rates."

The facts show that the defendant was on duty, without troops, upon the Osage Indian reservation, acting as agent for said Indians. The question arises whether or not, at that station, there were public quarters. If there were none, he was entitled to commutation as pay for the procurement of quarters at the established rates. As used in this regulation, "public quarters" signify quarters provided by the national government for the use of army officers while performing their duties. Has the government provided the defendant such quarters? It is agreed and set forth in the fifth paragraph of the agreed statement of facts:

"That there was provided by the government of the United States, free of charge, for the defendant's occupancy and use and comfort, a building and quarters suitable for the occupancy of an officer of the rank of captain in the regular army of the United States, upon said Osage Indian reservation, which had been erected in the year 1873; which said building and quarters were in the possession of the defendant, as such acting Indian agent, through the whole of the time he was such Indian agent, and was under the control of the government of the United States, and had theretofore and at all times been designated by the government of the United States and used as a residence and quarters for the United States Indian agents and acting Indian agents of said Osage Indian reservation, and was subject to such use during the whole of the time the said defendant acted as Indian agent upon said Indian reservation."

This would seem to answer the question as to whether or not there were public quarters provided by the government at said Indian reservation or agency for army officers acting as Indian agents, or assigned to perform the duties of Indian agents. It is undoubtedly claimed, however, that these quarters so provided for the use of the defendant at said agency were built for the benefit of the Indians exclusively, and with moneys provided by the act of July, 1870, for their benefit, and that the same are not "public quarters." It is to be noted that it is not stated or agreed to that the Indians actually owned these quarters, but only that they were built with moneys which belonged to them, and for their benefit exclusively. It is not stated that they were build under a contract with the Indians, or that they were ever delivered to the Indians, or used and occupied by them. These quarters, it appears, were built upon the Osage Indian reservation. By article 2 of the treaty with the Great and Little Osage Indians, dated June 2, 1825, there was reserved to said tribes, so long as they might choose to occupy the same, a tract of land which embraced the section of country upon which these buildings were erected, and in that clause of said treaty it is provided that upon said reservation the agent for said tribe, and all persons attached to said agency, as also such teachers and instructors as the president might think proper to authorize and permit, should reside and occupy and cultivate, without interruption, such lands as might be necessary for them. This reservation did not abrogate the paramount title of the United States to said reserved lands. The legal title remained in

the government. A right of occupancy was granted to the Indians, subject to the above conditions as to the right of the agent for said tribes and other parties named to reside thereon. It must be acknowledged that this was a peculiar way on the part of the government of the United States to provide for the Indians a compensation for its violation of a solemn treaty compact made with them by making an appropriation for the building of a house upon its lands for the use and occupancy of an Indian agent,—an officer of the United States. This, however, appears to be the fact. It is agreed by the parties herein that the building provided for the occupancy and use of the defendant was a building and quarters suitable for occupancy of an officer of the rank of captain in the regular army of the United States, and the inference would be that it became and was a part of the realty embraced in the Indian reservation, and under these circumstances it was and is the property of the national government. The army regulation above referred to did not contemplate that the quarters furnished should be quarters expressly built by the government for army officers, and devoted exclusively to that purpose. Any suitable quarters provided by the national government, in any way, ought to meet the demands and requirements of the regulation above referred too. I have come to the conclusion, therefore, that the government did provide for the defendant "public quarters" on the Osage Indian reservation.

The next question is, the money having been paid over to and received by the defendant by reason of an erroneous construction of the law, can the same be recovered from the defendant by the government in this suit? The paymaster who paid the defendant the above sum of money could go no further in this matter than he was authorized by law. The law limited his powers. He could bind the government only to the extent authorized by law. The government was not bound when he exceeded the authority given him by the federal statutes. The money paid to the defendant was the money of the government, and, as stated above, the government having provided the defendant with suitable quarters, free of charge, the paymaster was not authorized to pay him this money. That belonged to the government. Under such circumstances the following decisions maintain the rule that the government may sue for and can recover back this sum of money so paid: McElrath v. U. S., 102 U. S. 441, 26 L. Ed. 189; Wisconsin Cent. R. Co. v. U. S., 164 U. S. 190, 17 Sup. Ct. 45, 41 L. Ed. 399.

Interest is demanded in this case on the amount found due from February 1, 1894, till paid. I hold, however, that the rule is that where money has been paid to another by mistake, unaccompanied by fraud, interest should not be allowed on the same until a settlement has been made between the parties. The second auditor of the treasury is authorized by the statutes of the United States to settle the accounts of army officers. In this case it is admitted that a settlement was made by the proper officer on the 17th day of November, 1897. The statutes of Montana provide that after the settlement of any account interest shall be allowed thereon at the rate of 8 per cent. per annum. In the case of Goddard v. Foster, 17 Wall. 124, 21 L. Ed.

589, it is held that in a case like this the law of the state should control. The government, therefore, is entitled to interest on the above sum of $240 at the rate of 8 per cent. per annum from the 17th day of November, 1897, the date of the settlement of the said account. It is therefore ordered that the plaintiff recover judgment against the defendant for the sum of $294.94, together with costs to be taxed.