WATERS *v.* STATE, Use of MARYLAND UN-
EMPLOYMENT INSURANCE FUND

[No. 220, September Term, 1958.]

338

*Decided June 29, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Lowell Goerlich,* with whom were *Edward W. Mogowski* and *Callegary, Bracken & Callegary* on the brief, for the appellant.

*James N. Phillips,* with whom were *C. Ferdinand Sybert, Attorney General, Bernard S. Melnicove, Special Assistant Attorney General,* and *J. Robert Brown* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

William Waters, the appellant, was employed by American Radiator and Standard Sanitary Corporation (the Employer or the Radiator Company). He was discharged by the Employer on October 18, 1956, and promptly filed a claim for benefits under the Unemployment Insurance Law (Code (1951), Article 95A, referred to below as the Act). Following proceedings summarized below, on or about May 14, 1957, the Fund paid him benefits aggregating $449.00 for the period from October 18, 1956, to January 24, 1957. As the result of an arbitration proceeding pursuant to a collective bargaining agreement between his employer and his union, the arbitrator directed that Waters be reinstated as an employee of the Radiator Company with full seniority rights and that he "be made whole for the time lost by reason of his discharge." The arbitrator's decision was rendered on May 17, 1957, and Waters was reinstated on May 22nd. The net amount paid him by the Employer was $1,890.91, representing back pay of $2,382.-34, less earnings of Waters during the period in other employment. No deduction was made for unemployment insurance benefits. The Department, on being informed of the award and payment under the labor agreement, and after notice to Waters,

made a redetermination of his claim and found that the benefits of $449.00 paid him constituted an overpayment which should be recovered under Section 16 (d) of the Act (Section 17 (d) of the Act in the 1957 Code). This suit was accordingly brought by the State on behalf of the Fund, and resulted in a judgment for the plaintiff in the amount of $449.00, plus interest and costs. Waters appeals therefrom.

Waters' claim was filed on October 21, 1956. The Radiator Company advised the Department of Employment Security (the Department) that Waters had been discharged for gross misconduct in connection with his work. Such a ground for discharge, if found to exist by the Executive Director of the Department (the Director), would, under Section 5 (b) of the Act (Section 6 (b) in the 1957 Code), disqualify an employee from receiving benefits until he should have become reemployed and his earnings should equal at least ten times his weekly benefits. A Claims Examiner found Waters so disqualified. Waters appealed, and after a hearing a Referee, on December 12, 1956, found that Waters had been discharged but that there had been no misconduct on his part. The Referee accordingly reversed the decision of the Claims Examiner. The Employer appealed to the Employment Security Board, and that Board, also after a hearing, affirmed the Referee on May 14, 1957.

In the arbitration proceeding above mentioned, the arbitrator found that Waters had not been guilty of the misconduct charged against him, thus reaching substantially the same conclusion as the Referee and the Board.

Section 16 of the Act deals with offenses under the Act and penalties therefor and the recovery of overpayments. This suit was instituted pursuant to Section 16 (d). Subsections (a), (b), (c) and (e) all deal with false statements or representations knowingly made and with a knowing failure to disclose a material fact. Section 16 (d) is broader. It reads as follows:

> "Any person who, by reason of the non-disclosure
> or misrepresentation by him or by another of a mate-
> rial fact (irrespective of whether such non-disclosure

or misrepresentation was known or fraudulent) has received any sum as benefits under this Article while any conditions for the receipt of benefits imposed by this Article were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the Board, either be liable to have such sum deducted from any future benefits payable to him under this Article or shall be liable to repay to the Board for the unemployment compensation fund, a sum equal to the amount so received by him, and such sum shall be collectible in the manner provided in Section 14 (f) of this Article for the collection of past-due contributions."

As now amended, the Executive Director of the Department is substituted for the Board, and the cross reference as to the manner of collection is to Section 15 (f) of the 1957 Code. Section 16 of Article 95A of the 1951 Code has become Section 17 of the same article in the 1957 edition. Chapter 391 of the Acts of 1957 added subsection (f) to this section. It imposes a limitation of two years from the date of commission of the offense or offenses charged upon prosecutions for violations of subsections (a), (b) and (c). Chapter 392 of the Acts of 1957 amended subsection (e) by providing: first, that any person found by the Board (now the Director) to have made a false statement or representation knowing it to be false, or knowingly to have failed to disclose a material fact, in order to obtain or increase any benefit, shall (instead of may) be required by the Board to repay all benefits for the benefit year with respect to which such false statement or representation or non-disclosure occurs; and second, that such a person shall (not, may) be disqualified from receiving benefits for a specified period of one year from the date on which the determination is made that an improper claim was filed, and thereafter while any sum payable under this subsection is still due and unpaid. The previous law did not relate the then specified period of disqualification to the date of determination that the claim was improper.

Subsection 15 (f) of Article 95A of the 1957 Code, which

was in force when this suit was instituted, is identical in substance with the previous Section 14 (f). It deals with collections of assessments from employers and provides that the amount due may be collected by civil action in the name of the State and imposes costs upon an employer adjudged in default. It further provides that the Director may proceed in the collection of contributions in the manner prescribed by Code (1957), Article 81, Sections 206-211, inclusive.

The only one of these sections of Article 81 which has been specifically relied upon by either party to this suit is Section 206, invoked by the appellee, which authorizes a suit to be brought in assumpsit and provides that "such suit may be maintained notwithstanding the existence of other remedies by way of sale of real estate, or otherwise." The State contends that this action is maintainable as one for money had and received, and urges in substance that this is necessary in order to prevent unjust enrichment. The appellant-claimant contends that recovery can be had only if the conditions specified in Section 16 (d) of the Act are met.

Before turning to the principal issues in the case we must note one matter which was brought to our attention by the appellee's brief and was discussed at the oral argument. This is the fact that *pendente lite* the Fund has been made whole through the Department's applying unemployment insurance benefits accruing to Waters to repayment of the $449.00. These benefits accrued through Waters having become unemployed in 1958. This suit was instituted by the filing on November 4, 1957, of a declaration clearly based upon Section 16 (d) of the Act. The case was heard on September 17, 1958, the memorandum opinion of the trial court was filed on October 22, 1958, judgment *nisi* was entered on that date, and judgment absolute in favor of the plaintiff was entered on October 27, 1958. Meanwhile, Waters had filed a new claim for unemployment insurance benefits. Claims were accepted for eleven weeks from September 5 to November 14, 1958; but the amounts allowed were not paid to Waters and were used, instead, to reimburse the Fund. These facts were learned by counsel at some date subsequent to the entry of judgment. Though both sides wish to have this case determined on the

merits, these facts have been brought to our attention as possibly showing that the case is moot.

We think that it should not be so regarded. The fact that this situation was unknown to counsel and is not shown by the record, of course, precluded any question of mootness—in whole or in part—being raised in the trial court, although it would appear that most of the applications of benefits had been made before the entry of judgment. In addition, the right of the Director or of the Department so to apply these benefits depended upon the very questions which were at issue in the trial court and which had been placed before that court by the plaintiff. It may be granted that under the terms of Section 16 (d), the Director might have proceeded to collect either by suit or by application of subsequent benefits, as and if they might accrue. There were no such benefits at the time when this suit was filed, but the suit was pending when such new benefits did accrue and it was actually tried before more than two of such applications had been made. We think that by filing and by proceeding with the suit the State elected to pursue that remedy. See *City of Baltimore v. Moore,* 209 Md. 516, 523-524, 121 A. 2d 857; *Petillo v. Stein,* 184 Md. 644, 651, 42 A. 2d 675; *Beall v. Pearre,* 12 Md. 550, 566, each of which deals with the doctrine of election of remedies, though none of them is directly in point on the facts and the *Petillo* case recognized the doctrine but held it inapplicable. Here, to hold the case moot, would have a practical effect equivalent to giving the appellee the benefit of an attachment regardless of the validity or invalidity of the claim upon which it is founded; and it would deprive the appellant of an opportunity to have the validity of the appellee's claim carried through to adjudication in a proceeding instituted by the appellee, which necessarily put the validity of its claim in issue. The State, as we have already noted, does not seek such an advantage. We may add that the situation here is more or less the converse of that which arose in *Alleghany Corporation v. Aldebaran Corporation,* 173 Md. 472, 196 A. 418, where, after the case had been argued and submitted in this court, the appellants took action which had the effect of abandoning the proposed consolidation of the appellant corporations which the appellees had brought

suit to enjoin, so that no relief which the court might give could be more adequate than what they had received as a result of the appellants' action. On the other hand, no rights of the appellants had been finally adjudicated, since the orders appealed from were only interlocutory. This court, therefore, held the cases to have become moot and dismissed the appeals. In the instant case, the judgment appealed from is final and it is adverse to the appellant's claimed rights. A dismissal of this appeal as moot might leave the appellant without any remedy.

In *Employment Security Board v. Spiker*, 194 Md. 351, 71 A. 2d 299, a claimant had been paid unemployment insurance benefits. As a result of a subsequent investigation, the Board found that during the period for which said payments were made, the claimant had received some earnings which he failed to disclose to the Board, but that the non-disclosure was not due to any fraudulent intent. The Board then proceeded, under the assumed authority of Section 16 (d) of the Act, to enter an order requiring the claimant to repay the sums which he had received as unemployment compensation. The claimant appealed to a Circuit Court under the supposed authorization of Section 6 (h) of the Act (Section 7 (h) of Article 95A of the 1957 Code), providing for judicial review. The Circuit Court reversed the order of the Board and the Board appealed. This Court held that the Board had no authority to pass an order requiring the claimant to refund the benefits received, that the "only effect of that order [was] the determination of the Board to bring suit as provided in Article 95A, Section 14 (f)", and that such an order was not subject to judicial review under Section 6 (h). In the instant case, the order on redetermination was that "the $449.00 unemployment insurance is an overpayment and must be recovered pursuant to Section 16 D [sic] of the Maryland Unemployment Insurance Law."

This order is very similar in terms as well as in effect to what was found to be the "only effect" of the order in the *Spiker* case, though the order in this case did not purport to limit the projected means of recovery to bringing a suit therefor. It was broad enough, as noted above, to authorize either

a suit or a recapture through the application of future unemployment insurance benefits.

As to one aspect of the matter, we are thus brought back to the election of remedies already discussed. As to another aspect, it seems that the present order was no more a final adjudication, whatever method of election might be pursued, than was the order in the *Spiker* case. That order was held not to be binding except as a determination by the Board to bring suit. Accordingly, the present order does not amount to a bar to the assertion by Waters of a claim for the amount withheld from the unemployment benefits which accrued to him in 1958. It would seem an unnecessary, technical refinement to hold that the claimant should have appealed from the action of the Director when such an application of funds was made and that he could not continue to litigate his basic right, which was already at issue in this case—especially when this case was either almost or actually on trial, or was awaiting decision throughout most of the period when these applications were being made.

We conclude that the case is not moot.

On the merits of the case, three principal questions are presented: First, whether the claimant was "unemployed" within the meaning of the Act during the period for which unemployment benefits were paid out of the Fund; second, whether the payment of such benefits was the result of any non-disclosure or misrepresentation of a material fact; and third, whether recovery can be had on behalf of the Fund on a theory of unjust enrichment, even though neither non-disclosure nor misrepresentation of a material fact be shown.

The answer to each of these questions depends upon the construction of the Act. It is, therefore, appropriate to turn to it for a declaration of the policy which the Act is intended to serve and for the guidance which the Act gives us as to its interpretation. Section 2 sets forth "[a]s a guide to the interpretation and application and interpretation of this Article, the public policy of this State" which the Act is intended to serve. The declaration of policy states in part that "[i]nvoluntary unemployment is * * * a subject of general interest and concern which requires appropriate action by the Legislature

to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family." It further states that, in the considered judgment of the Legislature, the public good and the general welfare of the citizens of the State require the enactment of this measure "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." This policy and the remedial character of the act have been consistently recognized by this Court. *Md. Unemployment Compensation Board v. Albrecht,* 183 Md. 87, 89, 36 A. 2d 666; *Saunders v. Md. Unemployment Compensation Board,* 188 Md. 677, 681, 53 A. 2d 579; *Robinson v. Md. Unemployment Security Board,* 202 Md. 515, 518, 97 A. 2d 300.

The definition of "Unemployment" stated in Section 19 (1) of the Act (Section 20 (1) of Article 95A of the 1957 Code), so far as here pertinent, is as follows: "Unemployment. An individual shall be deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him * * *." "Wages" are defined in Section 19 (n) of the Act, the pertinent provision of which is contained in the first sentence reading as follows: " 'Wages' mean all remuneration for personal services * * *." The State argues that the amount of the monetary award made by the arbitrator and paid by the Employer to make the claimant whole for the time lost by reason of his discharge constitutes "wages" for the weeks for which unemployment compensation was paid to the claimant, that since his discharge was wrongful, wages were "payable" to him throughout the period and that he was, therefore, not "unemployed" within the definition stated in the Act. The State relies strongly upon *Social Security Board v. Nierotko,* 327 U. S. 358, in support of its argument. There the employee was held, notwithstanding his discharge, to be within the definition of an employee under the National Labor Relations Act which included "any individual whose work has ceased * * * because of any unfair labor practice." There was no question that the individual had been an employee or that his discharge constituted an unfair labor practice under the Act. It was held that Nierotko also con-

tinued to be employed within the meaning of the Social Security Act's definition of employment as "any service of whatevery nature, performed * * * by any employee for his employer." It was further held that the back pay awarded to Nierotko for the period of his actual, though illegal, discharge constituted "wages" within the meaning of the Social Security Act for which he was entitled to credit on his Old Age and Survivors Insurance Account.

The appellant contends that *Nierotko* is not controlling, chiefly for these reasons: the difference in the purpose for which the question of employment or unemployment was being determined; the emphasis allegedly placed upon services in the definition of "wages" in Section 19 (n) of the Maryland Act; and the fact that the wrongfulness of Waters' discharge flowed from the violation of a contractual, rather than a statutory, right.

Here, considering Waters' position from a practical viewpoint, we find that he was just as badly off insofar as day to day subsistence was concerned as if he had been laid off for lack of work. True, he had a claim against his Employer under the collective bargaining agreement upon which he was ultimately successful. However, in the meanwhile, the Employer was insisting that Waters' discharge was for good cause and was contesting both his right to receive unemployment compensation under the Act and his right to reinstatement with back pay under the collective bargaining agreement. From an economic point of view, it would have been an untrue statement (or at the very least a highly misleading one) for one in the position in which Waters was placed immediately after his discharge to have stated flatly that he was then employed. Such a flat statement, if unexplained, would, we think, have been quite clearly fraudulent, if it had been contained, for example, in an application for credit made at that time.

With these facts and with the provisions of Section 2 of the Act in mind, we think that it would be an unwarranted construction of the words "wages payable" as used in Section 19 (1) of the Act in defining "unemployed" as meaning not "wages currently payable," but "wages legally due and payable upon a contingency"—in this event a successful outcome (from

Waters' point of view) of his claim for wrongful discharge. The doctrine of relation-back simply does not fill the need which the Act was designed to meet. A disputed claim, even though it may later be established as perfectly valid, is not the equivalent of cash when it comes to paying for food at the grocery store.

That the General Assembly intended that persons discharged without fault on their part should be entitled to receive benefits under the Act seems apparent from the general words of the Act and from the disqualification raised by Section 5 (b) against those who voluntarily quit and those guilty of actual or threatened deliberate and wilful misconduct connected with their work and the lesser disqualifications provided for by Section 5 (c) against those discharged or suspended for less serious misconduct connected with their work.

The parenthetical clause in Section 16 (d) of the Act under which recovery may be had where there has been a non-disclosure or misrepresentation of a material fact resulting in the receipt of benefits under the Act, which reads "(irrespective of whether such non-disclosure or misrepresentation was known or fraudulent)", is intended to make an innocent non-disclosure or misrepresentation of a material fact as effective as a basis for recovery as a non-disclosure or misrepresentation knowingly or fraudulently made. See *Tube Reducing Corp. v. Unemployment Compensation Comm.,* 62 A. 2d 473 (N. J.). However, even under this broad scope which we think this clause is intended to have, there must still be a non-disclosure or misrepresentation of a material *fact.* We think that this contemplates an existing fact, not something which may or may not occur in the future. As a basis for relief against fraud, a misrepresentation must be a misrepresentation of an existing fact, and not merely of some future or contingent event or an expression of opinion, as was said in *Schnader v. Brooks,* 150 Md. 52, 57, 132 A. 381, and in *Boulden v. Stilwell,* 100 Md. 543, 552, 60 A. 609. See also *Glendale Corporation v. Crawford,* 207 Md. 148, 157, 114 A. 2d 33. We think that the same rule is applicable to an innocent misrepresentation or non-disclosure of a material fact.

We do not think that there was any misrepresentation (or,

as developed below, any concealment) of an existing fact at the time when the Board made its finding in favor of Waters and affirmed the allowance of his claims or when payment was made to him. Our view on this point is, we think, supported by *Hill v. Review Board of Indiana*, 112 N. E. 2d 218 (Ind. App.). In that case the Board sought to recoup unemployment benefits paid for a period for which the claimant was entitled to, and subsequently did receive, holiday pay. Recoupment was denied for either non-disclosure or misrepresentation under a statute similar to ours. The court held that there was no misrepresentation or non-disclosure at the time when the claim was made.

A somewhat different approach reaching the same result was taken in *Claim of Sapp*, 266 P. 2d 1027 (Ida.). There, a statement that the claimant was available for work was held not to be a misrepresentation, even though it was also held that the claimant was not so available, on the ground that the claimant was asserting a conclusion and hence was not failing to disclose or misrepresenting a material fact. A somewhat similar view was expressed in *Wagner v. Unemployment Compensation Comm.*, 198 S. W. 2d 342 (Mo.), in which the basis for payment of the claim was said to have been the finding by an administrative official rather than the claimant's statement of his claim.

For the reasons above set forth, we hold that the possibility of the claimant's reinstatement and of his receiving compensation for time lost did not prevent his being "unemployed" during the time when he was actually not working for the Employer and when the Employer was paying him no wages and was denying and contesting his right to compensation under the collective bargaining agreement. Consequently there was no misstatement.

This conclusion renders any extended discussion of the second question unnecessary, insofar as misrepresentation is concerned. Since, as we hold, the claimant was unemployed at the time when he represented himself as being unemployed, his statement to that effect cannot be considered a misrepresentation. As to the matter of concealment of a material fact, which is the other ground for restitution under Section 16 (d)

of the Act, we think there was none. One fact, not already mentioned, which is stipulated in this case is that before the Board made its decision affirming the Referee's decision in favor of Waters, Waters informed the Board that the differences between him and the Employer were then pending in proceedings before an arbitrator, and that the date of the hearing before the arbitrator was April 24, 1957. Waters' claim was, of course, paid pursuant to the Board's decision.

We also note that Waters' original claim showed that he denied the accusation upon which his discharge was based. The propriety of his discharge—whether he had or had not been guilty of the misconduct alleged—was directly in issue before the Examiner, the Referee and the Board. Each of the last two upheld Waters. The Board may well have anticipated that on the same issue the arbitrator under the collective bargaining agreement would reach the same conclusion. The provisions of that agreement with regard to wrongful discharge and with regard to the payment of full compensation for the time lost in the event of reinstatement were of a usual type and were such as the Board might well have expected they would be, even if the agreement itself were not introduced into evidence before the Board. See 7 Am. Jur. Legal Forms, § 7: 984, in which it is said: "Reinstatement with pay for time lost is the usual remedy for unjust discharge. Some agreements require pay for all time lost; others limit the amount of back pay to a specified maximum or require the arbitrator to determine the amount." See also *op. cit.*, § 7: 985 for a form of such a clause containing such provisions for use in a collective bargaining agreement.

We think it unnecessary to labor the point. The Board was as well informed of the possibility of an award of back pay as was the claimant, and it could make its own evaluation of his prospects of success in the arbitration proceedings as well as he could.

We now turn to the third question. As we have seen, under the language of Section 16 (d) of the Act, either a nondisclosure or a misrepresentation of a material fact resulting in the payment of benefits is a prerequisite to recovery or recoupment for the Fund pursuant to that subsection of the Act.

Doubtless, the General Assembly could have conferred a broader right of recovery in favor of the Fund, if it had seen fit to do so. Cf. *State, Use of Employment Security Board v. Rucker,* 211 Md. 153, 126 A. 2d 846, in which it was held that an employer could be required to reimburse the Fund for unemployment benefits paid by it, where the employer would otherwise have been unjustly enriched through having payments made by the Fund used or credited so as to reduce the employer's liability under a collective bargaining agreement to an employee found on arbitration to have been wrongfully discharged. The arbitrator's award there was for reinstatement and back pay less the amount of unemployment benefits.

The *Rucker* case was decided upon the principle of unjust enrichment or restitution and this court expressly stated that it was not necessary there to decide whether recovery could be had against an employer under Section 16 (d) of the Act. (211 Md. 157.) Here the question is not whether recovery can be had against an employer, but against an employee, otherwise than under Section 16 (d) of the Act. We think not.

It may be noted at this point that it is not easy to picture a situation in which Section 16 (d) of the Act could be applicable to recovery from an employer, since an employer is scarcely likely to fit the description of a "person who * * * has received any sum as benefits under this Article." *Rucker* does not hold to the contrary; it simply expressed no opinion on the question. Here, an answer to the question so left open seems pertinent as showing that the statute did not purport to set up such requirements or limitations as to recoupment from employers, so that there was no foundation to support a contention that the statute afforded an exclusive and limited remedy in the case of employers.

It is, however, obvious that Section 16 (d) does deal directly with recoupment from employees; and we think it sets up an exclusive and limited basis for such recovery. *Expressio unius est exclusio alterius.* We scarcely need repeat that the Unemployment Compensation Law is a remedial statute designed to afford protection to those who are unemployed through no fault of their own. The fact that Section 16 (d) is included under the heading "Penalties" seems of little im-

portance. It provides, among other things, for the recovery of payments made as a result of an innocent misstatement or concealment. Such a recovery could scarcely be considered a penalty. The Act, by Section 6 (i), makes provision for the prompt payment of benefits if the determination of an examiner allowing benefits is affirmed by a referee, or if a determination of a special examiner or of a referee is affirmed by the Board, regardless of any further appeal. The payment in this case falls within those provisions. The possibility that a claimant may ultimately be found not to be entitled to such payments, in whole or in part, is evident; yet the payments are to be made, and the institution of proceedings for judicial review does not operate as a supersedeas or stay, unless the Board so orders. It seems clear that if the doctrine of unjust enrichment or of restitution is applicable, recovery could be had in any case in which a claimant were finally adjudged not to have been entitled to payment (in whole or in part). It also seems clear that Section 16 (d) of the Act does not authorize recovery for such payments unless a non-disclosure or a misrepresentation of a material fact is shown. (A payment of an excessive amount as a result of a clerical error might stand on a different footing, but that question is not before us and we express no opinion thereon.) To allow a recovery of payments made pursuant to Section 6 (i) of the Act, without establishing either non-disclosure or misrepresentation would, we think, render nugatory the limitations upon recovery or recoupment which are plainly expressed in Section 16 (d). We do not think that such a construction would be warranted.

The judgment will be reversed, and since there is no apparent reason for a new trial, we shall enter judgment for the appellant.

*Judgment for the plaintiff-appellee reversed and judgment for the defendant-appellant; costs to be paid by the appellee.*

PRESCOTT, J., filed the following dissenting opinion, in which Horney, J., concurred.

The majority holding is that an employee, who was wrong-

fully discharged from his employment and paid unemployment insurance for the full time that he missed from his work, and who was subsequently reinstated in his employment pursuant to the decision of an arbitrator and paid the full amount of his wages for the time lost from work, does not have to reimburse the State Fund for the unemployment insurance paid to him. In other words, although not working he received the full and complete amount of wages he would have earned had he worked, plus the unemployment insurance paid to him and he is entitled to retain both—frankly described by his counsel at argument as a "windfall". It would seem that an inherent spirit of fairplay and conventional decency might have prevented the contest of such a suit—where the recipient of benefits required of the employer by the State for the recipient's welfare is also paid in full the wages he would have received for the time the benefits were paid, and he insists upon keeping both the benefits and the wages—but such is not the case, and this Court says that he is entitled to keep the double payment and this in spite of the fact that the award of the arbitrator was that the employee be "made whole for the time lost."

Everyone seems to be in accord that the result reached is an unfortunate one, but the majority feel that the rules of statutory construction compel such a holding. It seems that a different result may be soundly reached on, at least, three different grounds.

I

Although the Court holds that a recovery must be had under former Section 16 (d) (all references are to Article 95A unless otherwise specified) or not at all, the conclusion is reached by a very unusual application of the principles of statutory construction. Section 16 (d) is one of several subsections of Section 16, which is titled "Penalties." Subsections (a), (b), (c) and (e) prescribe penalties for making false statements to obtain or increase benefits and other wrongful conduct under Article 95A. Subsection 16 (d) prescribes the *penalty* for receiving benefits as a result of the "nondisclosure or misrepresentation" of material facts; it makes no attempt to supersede the remedy of the right to restitution un-

der the doctrine of unjust enrichment or the right to recover money paid by mistake. It is completely consistent with all of the canons of statutory construction to hold that Section 16 (d) is cumulative with these other remedies and not in derogation thereof.

This Court stated in *State, etc. v. Rucker,* 211 Md. 153, 157, 126 A. 2d 846, that there was no known or fraudulent non-disclosure or misrepresentation by anyone, and then quoted, with approval, Lord Mansfield's statement, as follows:

> " 'If the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract, ('quasi ex contractu',) * * *. * * * the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.' It is stated in *Poe on Pleading, Tiffany Edition,* Section 117, in reference to the count for money had and received: "This count is commonly said to be equally remedial with a bill in equity, and, in general terms, lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.' * * * *While there was only a special count in the declaration here, the facts are set out with sufficient particularity to be treated as a count for money had and received.*" [1]  (Emphasis added. The sentence italicized is particularly apposite here with reference to the procedural aspect of the case.)

The Court held that under the principle of unjust enrichment or restitution, recovery could be had against an employer, where, as in the present case, money was paid to an employee as unemployment compensation during a period when, as later

---

1. See also Restatement, *Restitution,* Section 1, comment (a) where it is said: "A person is enriched if he has received a benefit. * * * A person is unduly enriched if the retention of the benefit would be unjust."

determined by arbitration, the employee should not have been laid off and which compensation (notice this particularly) the employer had been given credit for in the settlement of the employee's claim against the employer. The Court stated beginning at page 159, "[t]he purpose of the statute [article 95A] is to *compensate* the employee for unemployment, not to unduly enrich the employer." (Emphasis added.) This is certainly true, but if the purpose were to compensate the employee, should it be used to enrich him unduly and unjustly?

It is difficult to envisage a more classic example for the application of the principle enunciated in the *Rucker* case and quoted above, and by the Restatement, than the facts of this case. If the "ties of natural justice" do not require and impel a refund here, there would seem to be no situation left to which the principle should be applied. If it be just for the appellant to retain the benefit here received, justice has taken on a different significance than that heretofore generally attributed to her, and must be redefined.

But why are we told that this regrettable result must be reached? The answer given is the maxim, *expressio unius est exclusio alterius*. As pointed out above, Section 16 (d) prescribes a penalty for receiving benefits by reason of nondisclosure or misrepresentation of material facts,[2] and it makes no attempt to take away or supersede other rights of action. 2 *Sutherland, Statutory Construction* (3rd Ed. Horack), Section 4916, deals with the subject as follows:

> "Whether a statute supersedes the common law, partially or entirely as to the subject matter of the statute, or whether it is cumulative is seldom explained in the language of the statute itself. But because statutes in derogation of the common law are

---

2. The appellant argues that the appellee must recover here under Section 16 (d) or not at all and cites *Employment Security Bd. v. Spiker*, 194 Md. 351, 71 A. 2d 299. This is not so. In the *Spiker* case, benefits were obtained by reason of nondisclosure or misrepresentation, which, under the statute must be recovered as prescribed by Section 16 (d). Here, money has been paid without any nondisclosure or misrepresentations; hence the section does not apply.

disfavored, the maxim [*expressio unius est exclusio alterius*] has been extensively employed to avoid repeal of the common law, and refuted in order to make the statute cumulative with it."

Here it is not necessary to refute the maxim. Section 16 (d) deals *only* with the manner in which money paid for benefits shall be recovered when paid as a result of *nondisclosure or misrepresentation* of material facts. It can subsist naturally and effectively together with the remedies of restitution, unjust enrichment and money paid by mistake, so as to be cumulative with them. The same author follows in the next paragraph:

" 'The maxim * * * requires great caution in its application, and in all cases is applicable only under certain conditions.' As a tool of statutory interpretation the maxim is important only insofar as it is a syllogistic restatement that the courts will first look strictly to the literal language of the statute to determine legislative intent. * * * Conversely, where an expanded interpretation will accomplish beneficial results [and] serve the purpose for which the statute was enacted * * * the maxim will be refuted, and an expanded meaning given. In all cases the numerous intrinsic and extrinsic aids of interpretation are of importance in ascertaining whether the maxim will prevail."

See to the same effect *Securities & E. C. v. Joiner Corp.*, 320 U. S. 344, 350 wherein it was said: "However well these rules [one of them being *expressio unius,* etc.] may serve at times to aid in deciphering legislative intent, they have long been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, * * *." The facts of this case would seem ample to justify the statement that a construction of the statute that would permit a recovery of a part of the double benefits paid would be beneficial and serve the purpose of the statute.

Let us analyse the majority holding a little deeper. It

decides that the legislature intended by the enactment of Section 16 (d), which provides a penalty for receiving benefits as a result of nondisclosure or misrepresentation of material facts, the penalty being a return of the benefits received, to preclude all other recoveries of benefits paid, whether proper or not, or paid under mistake. The conclusion is reached by the maxim [which is no more than an aid in determining the legislative intent] we have been considering. Suppose an employee be due $40.00 per week as unemployment insurance, a clerk erroneously makes the checks for $80.00, and the employee is paid for four months. Or, suppose the employee is due $40.00 per week and the I. B. M. machine, by mistake, makes three identical checks to the employee for each week for four months and he cashes the checks. Can it be seriously contended that the legislature intended that no recovery could be had in such situations.[3] The answer seems so simple that to pose the question should answer it, but the majority do not so hold.

Further, the unfortunate and regrettable conclusion is reached without a single authoritative or binding decision to the same effect, either of this Court or elsewhere, preceding it. The case of *Hill v. Review Board, etc.*, 112 N. E. 2d 218 (Ind., 1953), is not in point. There, the Review Board of Indiana held that the appellant had been overpaid unemployment benefits and that she owed a refund. The Court held that the Review Board was an administrative agency, whose powers were conferred and *limited* by statute, and the statute conferred the right to recoupment by the Board only in the event of nondisclosure or misrepresentation. That was not a case where, in the first instance, suit was instituted in a court of general jurisdiction to recover money which it was unjust for the defendant to retain or that had been paid him by mistake. The holding, as I read it, is merely that the Indiana statute con-

---

3. I happened to be a member of the State Senate when these provisions were first enacted. I cannot permit such an intent to be ascribed to the General Assembly of 1936, without protesting. In the ordinary course of events, the Legislature would not intend to take the hard earned money of an employer and confer it upon an employee as a donation.

ferred jurisdiction on the Review Board to recoup only in cases of nondisclosure or misrepresentation, and it does not deal with what a court of general jurisdiction could do, were the question raised as it is here.

This Court also held in the *Rucker* case, *supra,* 211 Md. at page 159, that payments made to an employee under the same circumstances as here were made by mistake of law. Restatement, *Restitution,* Section 46, says that such benefits when conferred by a state or a subdivision thereof are recoverable, and the courts seem to agree.[4]

---

4. The following are a few of the cases where a state or division thereof was granted restitution although payment was made by its officer or agent because of a mistaken belief that the money was due or because of a mistaken interpretation as to agreements. *United States v. Dempsey,* 104 F. 197 (1900) (excessive amount of commutation quarters; allowance made); *Heidt v. United States,* 56 F. 2d 559 (C. C. A., 5th Cir., 1932); *City of Demopolis v. Marengo County,* 195 Ala. 214, 70 So. 275 (1915) (money paid under a void appropriation); *Gilpatric v. City of Hartford,* 98 Conn. 471, 120 A. 317 (1923) (money paid over by state to the town); *State v. Young,* 134 Iowa 505, 110 N. W. 292, 13 Ann. Cas. 345 (1907) (payment to state bindery in excess of lawful fees); *Independent School Dist. No. 6 v. Mittry,* 39 Idaho 282, 226 P. 1076 (1924) (overpayment by town to contractor); *Ada County v. Gess,* 4 Idaho 611, 43 P. 71 (1895) (overpayment to county executor); *Inhabitants of City of Biddeford v. Benoit,* 128 Me. 240, 147 A. 151 (1929) (city paid bond which should have been paid by defendant contractor); *Ellis v. Board of State Auditors,* 107 Mich. 528, 65 N. W. 577 (1895) (payment of increased salary under unconstitutional statute); *Wayne County v. Reynolds,* 126 Mich. 231, 85 N. W. 574 (1901) (overpayment of services by county clerk); *Lamar Township v. City of Lamar,* 261 Mo. 171, 186, 169 S. W. 12 (1914) (township paid money to city which it was not required to do); State ex rel. *Buder v. Hackmann,* 305 Mo. 342, 265 S. W. 532 (1924) (income tax collector overpaid); State ex rel. *Barker v. Scott,* 270 Mo. 146, 192 S. W. 90 (1917) (overpayment to county clerk); *Erie County v. Town of Tonawanda,* 95 Misc. 663, 159 N. Y. S. 714 (1916) (erroneous distribution of taxes by county to town); *Cayuga County v. State,* 112 Misc. Rep. 517, 183 N. Y. S. 646 (1920) (erroneous payment by county to state upon supposed liability for road building); *City of Bismarck v. Burleigh County,* 49 N. D. 205, 190 N. W. 811 (1922) (city overpaid county for poor relief); *County Comm'rs v. Dun,* 4 Ohio S. & C. P. Dec. 260 (1896) (payment by county commissioners); *County of Alle-*

From the above, it can be plainly seen that it is not necessary to hold that the appellant is entitled to receive and keep all of the wages that he could have earned as well as unemployment insurance paid to him for the same period, and that period being when he did no work. And this conclusion is reached independently of Section 16 (d). The award of the arbitrator was that the appellant should be "made whole." The inescapable fact is that he has not only been made whole for the time lost, but he has received (and will now retain) the unemployment insurance as an absolute gift.

There seems to be a slight intimation that a ruling to the effect suggested would limit or retard the receipt of unemployment benefits. Such, of course, is not the case. Everyone would be entitled to receive the benefits and to retain them if not subsequently paid the wages he would have received.[5]

---

*gheny v. Grier,* 179 Pa. 639, 36 A. 353 (1897) (county overpays officers).

5. To illustrate the unsettled and unsatisfactory state in which the decision leaves the law upon the subject, we will compare it with the holding in the *Rucker* case, *supra,* 211 Md. 153. The facts are identical, with one exception. There, as here, the employee was wrongfully discharged; he was paid unemployment benefits; thereafter he was reinstated as the result of a decision of an arbitrator and paid back pay or wages for the period that he received the unemployment benefits. The only difference between that case and the present one is that in *Rucker* the employer deducted the amount of the unemployment benefits in making settlement with the employee; in this case the employee was paid the full sum due for back pay in his settlement with his employer.

Suit was brought by the State for the benefit of the Fund against both Rucker and his employer. This Court permitted a recovery against the employer on the ground of unjust enrichment. In so doing, it necessarily held the money paid to Rucker as unemployment benefits belonged to the Fund. A cannot recover benefits from C because of benefits conferred upon C by B. In the instant case, the Court either holds that the money paid for unemployment benefits belongs to the employee, or, if it belongs to the Fund, the Fund cannot recover it and the employee retains it whether it belongs to him or not. If the holding is that the money belongs to the employee, it is in direct conflict with the *Rucker* case; if, on the

## II

If it were necessary to resort to the provisions of said Section 16 (d), I think Judge Tucker had the case carefully and correctly worked out. He arrived at the conclusion that the appellee was entitled to recover under the specific provisions of that section. I shall not repeat his opinion here as it is printed in the record.

## III

Finally, the case is moot. The Fund, to which the money would go in the case of recovery here, has been made whole by the Department applying subsequent unemployment benefits accruing to Waters to the payment of its claim for the money involved herein. It has been paid in full and the time permitted by statute or regulation for Waters to contest such action has expired. It is true that the State does not desire to have the matter treated as moot. Unfortunately, the question of whether a matter is moot is not controlled by the desires of the litigants, counsel or the members of this Court. We have repeatedly stated that the Court will not render advisory opinions. If the Fund has been paid in full, it is certain the State is not entitled to an affirmance of its judgment against Waters. On the other hand, if the Fund has been paid in full (which it has and which is, of course, payment of the judgment against Waters) and the time for Waters to contest the action of the Department in making such payment has expired, what effect will the reversal of the judgment have? The appeal should be dismissed on the ground that the question involved is moot, with the appellee to pay the costs; but, if not dismissed, what has been said in I and II should prevail.

Judge Horney has authorized me to say that he concurs in this dissent.

---

other hand, it belongs to the Fund but the Fund cannot recover it, it presents a rather anomalous and distressing result.