[No. 44462.     En Banc.     December 30, 1976.]

DONNA L. SCHNEIDER, ET AL, *Respondents*, v. R. W. HUTT, *Appellant.*

*Slade Gorton, Attorney General,* and *Joseph M. Little-more, Thomas J. Wolfstone,* and *Stephen W. Burke, Assistants,* for appellant.

*Hafer, Cassidy & Price* and *M. Lee Price,* for respondents.

WRIGHT, J.—This is an appeal by the commissioner of the Employment Security Department from a judgment of the trial court. The sole issue is whether, under these facts, an arbitrator's monetary award is remuneration.

On December 3, 1971, respondents, members of Local 81 of the Amalgamated Meatcutters and Butcher Workmen of North America (hereafter Local 81), were laid off by their employer, King's Command Meats, Inc. (hereafter King's) for economic reasons. Thereafter, respondents applied to the Employment Security Department for unemployment benefits. After the statutory waiting period, each respondent received benefits during the period in question (December 3, 1971, to April 21, 1972) although the amount of

benefits received and the actual weeks to which the benefits apply vary in each individual case.[1]

King's and Local 81 had a working agreement that allocated certain jobs at the employer's plant to union members only, and provided that layoffs and recalls were to be governed by seniority. From December 3, 1971, to April 21, 1972, none of respondents was recalled by the employer, although work became available. Instead, the employer replaced respondents with either members of the owner's family or nonunion workers.[2] Local 81 contended that these actions violated the working agreement. The union filed a grievance and the matter went to arbitration on April 21, 1972. The arbitrator rendered the following decision:

> The Company did violate the Agreement by its actions between December 3, 1971, and the date of the hearing.
>
> Although the Plant Superintendent and the immediate family members are permitted to work, others are not permitted by the Agreement to work as wrappers, patty machine operators, or journeymen until the laid-off employees have been recalled.
>
> Laid-off employees who have been replaced by these "others" should be rehired and made whole for their loss in pay and benefits between December 3, 1971, and April 21, 1972 (the date of the hearing), less any earnings they have received from other sources. As additional work in the named classifications becomes available, the Company is required by the Agreement to rehire the laid-off employees on the basis of seniority.

The arbitrator left it up to the union and the employer to calculate the monetary amount of the award and to decide how it should be distributed among respondents.

After the audit of the employer's accounting records,

---

[1] For example, respondent Donna L. Schneider received benefits for 19 weeks, while respondent Francis F. Speer received benefits for 8 weeks during the period in question.

[2] The appeals tribunal, the commissioner, and the trial court all made a finding of fact that nonunion workers were hired instead of rehiring some or all of respondents. Since error was not assigned to these findings, we accept them as verities under the rules of appellate procedure in effect at the time this appeal was filed. *Independent Ins. Agents & Brokers v. Herrmann*, 79 Wn.2d 462, 486 P.2d 1068 (1971).

Local 81 and the employer agreed that a total of 1,668 hours had been performed by nonunion workers. The employer, however, did not keep the type of records that would allow precise determination of what rate of pay should be applied to these hours. Nevertheless, the union and the employer agreed that the rate of $4.275 per hour should be applied to the 1,668 hours to arrive at a lump-sum award of $7,130.70. The employer gave the union a single check to cover this portion of the award[3] and let the union decide how the award should be distributed among respondents. In its findings of fact, the trial court described the method the union used to distribute the award to respondents:

The funds were distributed among all the eleven Petitioners pro rata in accordance with the number of days off for each such employee up to April 21, 1972, without regard to their own relative seniority among themselves and notwithstanding that many of their actual days off occurred subsequent to the date last mentioned and that some of the Petitioners admittedly would not have been called back even if the employer had faithfully followed the agreement.[4]

The Department of Employment Security learned about the arbitration award. By using a formula to prorate each respondent's portion of the arbitrator's monetary award over a number of weeks when respondents were receiving unemployment benefits, the department determined that respondents received benefit overpayments. Overpayment notices were sent to each respondent.

The department reasoned that the award by the arbitrator constituted remuneration within the meaning of RCW 50.04.320 and was therefore reportable and deductible against unemployment compensation benefits received. This reasoning was upheld by the appeals tribunal and the com-

---

[3]The 1,668 hours were also used to compute pension and health benefits, and separate checks were issued by the employer to cover those amounts.

[4]This portion of the trial court's finding of fact No. 4 was not assigned as error by appellant. See footnote 2.

missioner. Respondents appealed to the Superior Court for King County.

The court concluded that the commissioner's ruling was clearly erroneous. It reasoned that the employment relation between respondents and King's had been validly terminated, and that the arbitrator's award was a result of the employer's hiring of nonunion workers to perform union jobs instead of rehiring some or all of respondents. Thus, the court held that the monetary portion of the arbitrator's award resembled an award of damages due to the tortious act of another and that the award did not constitute remuneration within the meaning of RCW 50.04.320. The court also held that one of the policies of the Employment Security Act is to prevent the spread of economic insecurity due to unemployment. The court reasoned that this policy would be defeated if

> most of the fruits of a successful prosecution of a grievance based upon [an employer's violation of its working agreement with the union] is to be recouped by the state and ultimately applied to the improvement of the experience rating applicable to the industry of the employer who violated the agreement in the first place.

The commissioner appealed to the Court of Appeals. That court certified the case pursuant to RCW 2.06.030 (d) and we accepted certification on September 23, 1976. We affirm the trial court.

Initially, we hold that the issue involved in this case is properly within the scope of review under RCW 34.04.130 (6) (e). *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969).

■ Appellant argues that the monetary portion of the arbitrator's award is money paid by an employer to an employee as part of their overall employment relationship and therefore is remuneration as defined in RCW 50.04.320.[5]

---

[5] RCW 50.04.320 provides in pertinent part:

" 'Remuneration' means all compensation paid for personal services including commissions and bonuses and the cash value of all compensation paid in any medium other than cash. The reasonable cash value of compensation paid in any medium other than cash and the reason-

In support of this position, appellant cites cases from other jurisdictions which have held that under the facts before them an arbitrator's award of back pay to an employee who ·had been wrongfully discharged constitutes remuneration under their unemployment security acts.[6] Appellant argues further that it is immaterial that each respondent did not receive the exact amount of wages actually lost by him.

We are not persuaded by appellant's argument for several reasons. First, the facts in the cases cited by appellant are different from the facts involved in the present case. As appellant admits in its brief, most of the case law in this area has been developed in situations where the amount and timing of lost wages was readily calculable. Second, courts in some states have relied on different provisions in their unemployment compensation laws to reach their conclusions.[7] Third, appellant overlooks the events that caused Local 81 to file a grievance. The trial court found that the crucial fact was the employer's hiring of nonunion workers. This was the violation of the working agreement that led to the arbitrator's award in favor of Local 81. As the trial court stated, this makes the arbitrator's decision more like an award of damages for tortious conduct rather than an award of back pay for lost wages.

Finally, while appellant considers it immaterial, the fact that the award of money was paid in a lump-sum to the union is central to a proper characterization of the payments made to respondents. It was the union that received the money and it was the union that parceled it out. The trial court found that the money was distributed among respondents even though some of those persons would never have been rehired during the period from December

---

able value of gratuities shall be estimated and determined in accordance with rules prescribed by the commissioner."

[6]*See, e.g., Arizona Department of Economic Security v. Lidback,* 26 Ariz. App. 143, 546 P.2d 1152 (1976); *Griggs v. Sands,* 526 S.W.2d 441 (Tenn. 1975); *Texas Employment Comm'n v. Busby,* 457 S.W.2d 170 (Tex. Civ. App. 1970); *Meyers v. Director of the Division of Employment Security,* 341 Mass. 79, 167 N.E.2d 160 (1960); and *In re Stewart,* 279 App. Div. 500, 111 N.Y.S.2d 192 (1952).

[7]*See, e.g., Waters v. State,* 220 Md. 337, 152 A.2d 811 (1959).

3, 1971, to April 21, 1972. Thus, some of those persons who received money technically could have not received back pay. We find it inconceivable under these circumstances that any of the money can be considered remuneration as defined in RCW 50.04.320. Accordingly, we affirm the trial court.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

Petition for rehearing denied April 6, 1977.