## JUDITH A. KATSIANOS *v.* MARYLAND EMPLOYMENT SECURITY ADMINISTRATION

[No. 1236, September Term, 1978.]

*Decided June 12, 1979.*

The cause was argued before MOYLAN, LOWE and COUCH, JJ.

*Charles Lee Nutt* and *Stuart Levine,* with whom were *Francomano, Clements, Radding & Nutt* on the brief, for appellant.

*Margaret E. Rawle, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Joel J. Rabin, Assistant Attorney General,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

Sir Isaac Newton, in 1686, expounded his Laws of Motion, the third of which has been simplified as follows: Every action has an equal and opposite reaction.[1] In this case we are called

---

1. 3 The Harper Encyclopedia of Science 822 (1963).

upon to decide whether the Court of Appeals decision in *Waters v. Maryland Unemployment Insurance Fund,* 220 Md. 337, 152 A. 2d 811 (1959) (hereinafter cited as *Waters*) prompted the Maryland Legislature to enact Section 17(d) of Article 95A in 1960. Appellant, Mrs. Katsianos, contends initially that there was no legislative reaction to *Waters* and, in the alternative, the new legislation does not affect the Court of Appeals' holding in that case. Appellee, the Maryland Employment Security Administration (ESA), naturally contends otherwise.

The specific issue raised is whether ESA may recoup unemployment insurance benefits paid when a claimant is later awarded back pay by the National Labor Relations Board.

Judith A. Katsianos, formerly an employee of the Federal Yeast Corporation of Baltimore City,[2] was terminated from her employment on October 1, 1975. She subsequently applied for and received unemployment insurance benefits of $89 per week for the period beginning November 8, 1975 and ending December 18, 1976. The amount of benefits received by appellant totaled $4,094.

Following her discharge appellant filed an unfair labor practice charge with the National Labor Relations Board (NLRB) against her former employer, which resulted in a stipulated settlement. The NLRB issued a formal order embodying the terms of settlement. The order awarded appellant $9,520.60 in "back pay", a letter of recommendation from Federal and a letter offering her reinstatement. Additionally, Federal was required to post a notice concerning its labor activities. The order required of appellant that she reject Federal's offer of reinstatement, withdraw all other actions she had pending against Federal, and elicited from her a promise to desist from any future actions against the company.

The record discloses that the monetary award was the exact amount of wages appellant would have earned from the

---

2. Mrs. Katsianos was actually employed by Bakery Products, Inc., a wholly owned subsidiary of Federal Yeast Corporation.

company were it not for the termination, plus interest. In her request for withdrawal of a charge of discrimination filed with the Equal Employment Opportunity Commission, appellant specifically stated she had drawn $9,767.67, which represented back pay and interest; this sum was paid in January, 1977. In April, 1977, Federal notified the Employment Security Administration of this "back pay" settlement and felt that its account should be credited following appellant's repayment of the benefits she had received. This notice then triggered action by the Administration in the form of a "non-monetary determination" that appellant was ineligible to receive benefits because she was not unemployed and therefore resulted in an overpayment of $4,094. Appellant promptly noted an appeal. The appeal was heard by a hearing officer in June, 1977, who reversed the decision of the claims examiner. Federal thereupon noted an appeal to the Board of Appeals and a hearing was held in November, 1977. The Appeals Board reversed the decision of the hearing officer (Appeals Referee), basing its determination upon its finding that appellant was not unemployed during the period she received benefits and thus was disqualified from receiving them. Appellant then appealed to the Superior Court of Baltimore City. That court, after a hearing, agreed with the decision of the Board of Appeals, and this appeal followed.

Appellant argues appellee was not entitled to recoup the unemployment benefits she had received because (1) she was eligible for the benefits when she received them, and (2) the "back pay" award did not constitute wages within the terms of the Maryland Unemployment Security law. We have little difficulty in affirming the conclusion reached by the Superior Court and the Board of Appeals with regard to the second reason. The record clearly demonstrates that the amount of the award was identical to the wages appellant would have received had she not been terminated; the NLRB compliance officer's letter to Federal referred to the award as "back pay". She herself referred to it as "back pay" in her Equal Employment Opportunity Commission withdrawal notice, and we find no evidence that she complained when Federal, in

payment of the award, deducted Federal and State withholding taxes and FICA taxes. We recognize that appellant testified that the award was merely a settlement of a larger claim against her employer. Nevertheless, we believe there was ample evidence before the Board, as indicated above, to support its conclusion that the award of $9,520.60 represented back pay.

We have more difficulty with the first ground set forth by appellant but, nevertheless, conclude that we can afford her no relief. Appellant's argument here reduces itself to this: since, in actuality, she was terminated and unemployed when she received the unemployment benefits, she was an eligible person and, by implication at least, the fact of receiving the back pay would not change her eligibility. We think this argument ignores the clear import of the 1960 legislative action which we also believe to have been a reaction to the 1959 *Waters* decision.

In *Waters,* an employee was discharged and drew unemployment benefits but only after his claim therefor, which was resisted by his employer, had been approved by the Department of Employment Security (the Department). As a result of an arbitration proceeding pursuant to a collective bargaining agreement between his employer and his union, the arbitrator "directed that Waters be . . . made whole for the time lost by reason of his discharge." This award included back pay. Upon learning this the Department made a redetermination and found that the benefits paid to Waters constituted an overpayment and sought to recover the amount so paid under Section 16 (d) of the Act, Md. Code Ann. art. 95A, § 17 (d) (1957), which reads as follows:

> "Any person who, by reason of the non-disclosure or misrepresentation by him or by another of a material fact (irrespective of whether such non-disclosure or misrepresentation was known or fraudulent) has received any sum as benefits under this Article while any conditions for the receipt of benefits imposed by this Article were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the Board, either

> be liable to have such sum deducted from any future benefits payable to him under this Article or shall be liable to repay to the Board for the unemployment compensation fund, a sum equal to the amount so received by him, and such sum shall be collectible in the manner provided in Section 14 (f) of this Article for the collection of past-due contributions."

The Court of Appeals posed three questions it felt had to be addressed under the 1957 statute:

> "[W]hether the claimant was 'unemployed' within the meaning of the Act during the period for which unemployment benefits were paid out of the Fund; second, whether the payment of such benefits was the result of any non-disclosure or misrepresentation of a material fact; and third, whether recovery can be had on behalf of the Fund on a theory of unjust enrichment, even though neither non-disclosure nor misrepresentation of a material fact be shown."

It then concluded that Waters indeed had been unemployed at the time he received unemployment benefits and thus was an eligible person, specifically rejecting the State's argument on this point that the arbitrator's award constituted back wages thus disqualifying him since he was not unemployed. The Court also concluded that:

> "[I]t would be an unwarranted construction of the words 'wages payable' as used in Section 19 (1) of the Act in defining 'unemployed' as meaning not 'wages currently payable', but 'wages legally due and payable upon a contingency' . . ." *Waters, supra* at 348.

The Court further concluded that since Waters indeed was unemployed when he made his claim for benefits based on his unemployed status, there was no misrepresentation of an existing fact and thus no basis for recovery from him of those benefits he received under the authority of Section 16 (d). As to the third question posed, the Court resolved it quickly by concluding that Section 16 (d) was the only authority for

recoupment against an employee and it required a showing of either a non-disclosure or misrepresentation which were not present so no recovery could be allowed. The Court of Appeals then made this statement: "Doubtless, the General Assembly could have conferred a broader right of recovery in favor of the fund if it had seen fit to do so." *Id.* at 352.

The following legislative session, the Maryland Legislature saw fit to broaden the right of recovery in the Fund by enacting Chapter 91 of the Laws of 1960.[3] This, we conclude, can only be regarded as a direct reaction to the *Waters* decision. The General Assembly in enacting legislation is presumed to be fully aware of prior and existing judicial decision concerning such law. *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 498, 331 A. 2d 55 (1975) and cases cited therein. By this Act the Legislature, in part, repealed § 16 (d) of the Act (§ 17 (d) of the Md. Code) which was captioned "Receipt of benefits by reason of nondisclosure or misrepresentation of material fact" and enacted a new Section 17 (d) captioned "Recoupment of benefits paid", the law governing this case, which reads as follows:

> "*Recoupment of benefits paid.* — When any person has received any sum for benefits for which he is found by the Executive Director to have been ineligible, the amount thereof may be recovered from benefits payable to him or which may be payable to him in the future, or in the manner provided in Section 15 (f) of this article for the collection of past-due contributions. *Such sums may be recouped by either of these methods provided that whenever the Executive Director decides that any sum received by the claimant shall be recouped, either because he has received or has been retroactively awarded wages,* was not unemployed as that term is defined in this article, or was disqualified or otherwise ineligible for such benefits, he shall promptly notify the claimant of his decision

---

3. Now codified as Md. Ann. Code art. 95A, § 17 (d), (Repl. Vol. 1979).

and the reasons therefor. The decision and the notice shall state the amount to be recovered, the weeks, with respect to which such sum was received by or paid to the claimant, and the provision of the law under which it is found that the claimant was ineligible. The Executive Director may reconsider his decision at any time within one year after the date when it was made. Such decision or reconsidered decision may be appealed within the time limits and under the procedure prescribed in Section 7 of this article for appeal from a determination, but on appeal the issue shall be limited to whether or not the claimant was ineligible during the weeks in question." Md. Ann. Code art. 95A, § 17 (d) (Repl. Vol. 1979). (Emphasis added.)

One of the fundamental rules of statutory construction is that in ascertaining legislative intent, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous, meaningless or insignificant. *Krol v. York Terrace Building, Inc.,* 35 Md. App. 321, 329, 370 A. 2d 589 (1977). We believe it is clear that by this new legislation the Legislature was expressing its intention to provide for recoupment of benefits where the recipient has been awarded back pay, as occurred in *Waters* and this case, otherwise the phrase "or has been retroactively awarded wages" would be rendered meaningless.

Accordingly, we find no error and shall affirm.

*Order affirmed.*
*Costs to be paid by appellant.*