**KENTUCKY UNEMPLOYMENT INSUR-
ANCE COMMISSION, Appellant,**

**v.**

**GENERAL ELECTRIC COMPANY, Owens-
boro, Ky. et al., Appellees.**

**GENERAL ELECTRIC COMPANY, etc.,
Appellant,**

**v.**

**KENTUCKY UNEMPLOYMENT INSUR-
ANCE COMMISSION et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 3, 1971.

Paul E. Tierney, James G. Childers, Dept. of Economic Security, Frankfort, for appellant Kentucky Unemployment Ins. Comm.

Morton J. Holbrook, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellees General Electric Co., Owensboro, Ky., and others.

Zirkle, Raine & Francis, John Leahy, Louisville, for appellant General Electric Co., Louisville, Ky., Etc.

Paul E. Tierney, James G. Childers, Dept. of Economic Security, Frankfort, Manny H. Frockt, Edwin I. Baer, Louisville, for appellees Kentucky Unemployment Ins. Comm., and others.

Herbert L. Segal, Irwin H. Cutler, Jr., Louisville, for appellees, Allied Industrial Workers.

CULLEN, Commissioner.

Certain hourly-rated employes of General Electric Company, at its Owensboro plant, received unemployment insurance benefits (either in the form of cash benefits or credit for a waiting period) for weeks in 1967 and 1968 when the plant was shutdown, and certain hourly-rated employes of the company at its Louisville plant likewise received benefits for weeks in 1967 when the Louisville plant was shutdown. Each of the employes subsequently was paid *wages* by the company, for *one* of the weeks in each shutdown period for which he had received unemployment insurance benefits, in accordance with the union contract which entitled the employe to *vacation* pay for the week in question by virtue of continuity of service accruing subsequent to the shutdown period.

In appropriate proceedings before the Kentucky Unemployment Insurance Commission, the company sought to have its reserve account (KRS 341.040) credited with the amount of unemployment benefits paid for the weeks for which the employes subsequently received vacation pay. The commission rejected the claim. The company then appealed to the Daviess Circuit Court with respect to the Owensboro employes, and to the Jefferson Circuit Court with respect to the Louisville employes.

The Daviess Circuit Court entered judgment directing that the General Electric Company's reserve account be credited with the amounts charged to that account by reason of the payment of unemployment benefits to the Owensboro employes for the same weeks for which they subsequently received vacation pay. The Unemployment Insurance Commission has appealed from that judgment.

The Jefferson Circuit Court entered judgment denying any credit to General Electric's reserve account, but declaring that to the extent they had received vacation pay for the same weeks for which they were given unemployment benefits the Louisville employes had been "unjustly en-riched," and that the company "has the right to proceed as it sees fit in liquidating this unjust enrichment" (presumably by some kind of direct claim against the individual employes). General Electric has appealed from that judgment.

The two appeals have been consolidated.

The Unemployment Insurance Commission suggests in its brief, and we agree, that the answer to the question of whether the employes in question were *eligible* for the unemployment benefits they were given is dispositive of these cases; and we think that the answer is to be found in the determination of whether the weeks for which the employes received vacation pay were "weeks of unemployment" within the meaning of KRS 341.080(3), one of the requisites of which is that "the worker earned less than the benefit rate determined for him."

Under the contract between General Electric and the union representing its employes, in force at both the Louisville and Owensboro plants, hourly-rated employes were entitled to annual paid vacations in accordance with continuity of service, consisting of one week for one year of service, two weeks for two years, three weeks for 10 years, and 4 weeks for 20 years; the period of service for each employe being computed from the date of his employment. The contract provided, however, that in the event of a shutdown of at least two weeks' duration, all vacations for that calendar year up to two weeks should be considered to run concurrently with the shutdown. The contract further provided that with respect to any employe whose vacation eligibility had accrued prior to the shutdown, *payment* for the vacation would be made before the day of the shutdown, but with respect to any employe whose vacation eligibility had not thus accrued, but subsequently did accrue during the calendar year by reason of additional continuity of service, *payment* for the vacation would be made when the eligibility was attained.

The employes involved in these actions all were in the latter category—their eligibility

(for an *initial* week of vacation or for an *additional* week) was attained after the shutdown period.

The simple fact is that at the time the unemployment benefits were paid to the employes for the weeks in question, it was not known whether or not they would *become* "weeks of unemployment," because the determination depended on future events occurring within the calendar year. If the employe continued his service, he would be paid for the week of vacation, and the week would not be one of unemployment. On the other hand, if he did not continue in service long enough to attain eligibility for vacation pay, he would not be paid and the week would be one of unemployment.

We see no reason, in a situation like this, why determination of the question of whether a week is in fact one of unemployment could not be deferred until the controlling events have occurred. It appears that in most instances the delay would be only for a few months. Such a delay seems far more preferable than, as in the instant cases, to pay benefits for a week which turns out not to be one of unemployment, or to arbitrarily deny benefits on the mere possibility that the week may so turn out.

Our views are in accord with those expressed by the Texas Supreme Court in Texas Employment Commission v. International Union of Electrical, Radio and Machine Workers, 163 Tex. 135, 352 S.W.2d 252. As that court said, "the Commission may establish an appropriate procedure" for determination of claims on the basis of events occurring subsequent to the weeks for which the claim is made.

We find nothing in the provisions of the union contract, for deferment of vacation pay until eligibility has accrued, that even remotely violates the prohibition of KRS 341.470 against agreements to waive, release or commute rights to unemployment benefits. No right to benefits arises, to be waived, released or commuted, for any week for which the worker is paid full wages.

There is some argument in the briefs on the question of whether, under the union contract, every employe "voluntarily" agreed to leave work during the shutdown periods, so that every employe was disqualified from receiving benefits during shutdowns regardless of whether he ever received any vacation pay. As we view the record that question is not properly in issue in either of the cases.

General Electric, on its appeal in the Jefferson County case, asks that judgment be directed requiring the Unemployment Insurance Commission, after crediting the company's reserve account, to proceed under KRS 341.415 to recover from the employes the amount of benefits improperly paid. We see no need to make such a direction because we believe, and the commission in its brief concedes, that it will be required to proceed under KRS 341.415 upon its having been determined that the workers were not entitled to the benefits that were given them.

Our conclusion is that the Daviess Circuit Court correctly determined that the employes were not eligible under KRS 341.-080(3) for unemployment benefits for weeks for which they ultimately received vacation pay; that the commission should have deferred decision on the claims for benefits until the controlling events occurred; and that the commission must credit General Electric's reserve account with the amount of the benefits improperly paid. The contrary determinations by the Jefferson Circuit Court were erroneous.

The judgment of the Daviess Circuit Court is affirmed. The judgment of the Jefferson Circuit Court is reversed, with directions for the entry of judgment in conformity with this opinion.

All concur, except REED, J., who did not sit.