GATLIFF COAL CO. and Kentucky Unemployment Commission, Appellants,

v.

William ANDERSON, Appellee.

KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION and Gatliff Coal Co., Appellants,

v.

William ANDERSON, Klan Smith, Robert Wilson, William Saylor, Donald Lawson, Billie Harp, James Noble, Jr., Ray Parker, Roy Peek, Mance Paul, Colin C. Clark, Johnnie Rains, Robert Bishop, Ancil Sowders, Gary Smith, Flem Mahan, George Canada, Ellis Noble, Sidley Allen, Richard Hall, Burchell Sizemore, Jesse Morris, Joe Rose, Jerry Coyt, Terry Smith, Wilburn Hickey, Johnny Fuson, Willie Hubbard, Aubrey Hale, Joe Wilson, Marshall Hatfield, Kenneth Simpson, Oscar Patterson, Jr., Jackie Jaggers, Michael Warren, Bobby Simpson, Bobby Huddleston, Custer Laws, Henry Lee, Curtis Laws, Jerry Fuson, Terry Brummett, Larry Simpson, Jakie Thomas, Jr., Thomas Akers, Billy Hensley, Gary Lewis, Clarence Hurst, Randle Wight, Darrell Emery, Denver Simpson, Dale Knuckles, Eddie Potter, Robert Allen, Laney Carter, Randall McGlone, Truman Williford, David Morgan, Jimmie King, Hubert Powell, Erskin Jones and Jerome Leach, Appellees.

Nos. 90–SC–193–DG, 90–SC–194–DG.

Supreme Court of Kentucky.

Aug. 29, 1991.

Brent L. Wilson, Elarbee, Thompson & Trapnell, Atlanta, Ga., Charles P. Lawrence, Cabinet for Human Resources, Frankfort, Edwin S. Hopson, Wyatt, Tarrant & Combs, Louisville, Richard Hankins, Atlanta, Ga., for appellants.

John Frith Stewart, Dennis Franklin Janes, Segal, Isenberg, Sales, Stewart & Cutler, Louisville, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which determined that the Unemployment Commission could not recoup previously awarded unemployment benefits from individuals who received back wages as a result of a litigated labor management arbitration for the period of time they also received unemployment benefits.

The sole issue is whether the Kentucky Unemployment Commission is permitted to

recoup unemployment payments from employees who are subsequently awarded back pay for the period for which the unemployment insurance was also paid. The Kentucky Unemployment Insurance Commission and the circuit court determined that recoupment could be made.

Anderson and Smith and sixty-one other employees of Gatliff Coal were awarded unemployment benefits for the period December 3, 1982 to August 5, 1983 when Gatliff closed certain mining operations. A labor dispute between the employees' union and Gatliff resulted in the award of back pay and interest to the employees. The arbitrator refused to allow Gatliff to deduct the amount of the unemployment compensation payments from the back pay award on the grounds that the benefits could be recouped by the state. This action was initiated when employees appealed the notices of adjusted determinations sent to them by the Unemployment Commission seeking a refund of the benefits. The Commission referee ruled the benefits must be repaid and the Commission affirmed that decision. The circuit court also affirmed the decision but was reversed by the Court of Appeals. This appeal followed.

Anderson and the others, through no fault of their own, were laid off in December 1982. There was no misrepresentation by the former employees as to their entitlement. In February 1984, the arbitrator ruled that Gatliff had permanently ceased operations, thereby precluding any reinstatement to the employees. The employees' union challenged the validity of the lay-off through the collective bargaining grievance arbitration procedure and in July 1983, an arbitrator ruled that Gatliff had laid off the employees in violation of the applicable collective bargaining agreement. Gatliff refused to comply with the rulings and the employees sued in federal district court for enforcement of the arbitration decision. In 1986, the U.S. District Court upheld the arbitrator. In 1987, the U.S. Court of Appeals for the Sixth Circuit upheld the judgment of the District Court.

Neither the Commission nor Gatliff make any claim that the employees made any false statement, misrepresentation or concealment of material information in applying for unemployment benefits in 1982.

K.R.S. 341.415(1) provides three conditions under which recoupment is permitted: 1) "Any condition for the receipt of such benefits was not fulfilled," 2) Receiving benefits "while he was disqualified from receiving benefits," or 3) "There has been a false statement, misrepresentation or concealment of material information." A review of the record indicates that the employees did not receive benefits while any requirement for the receipt of benefits was not fulfilled. They satisfied all the conditions for qualification for benefits as specified in K.R.S. 341.350. There was no misrepresentation, concealment or false statement as to eligibility of the recipients. The statute enunciates an exclusive and restricted basis for recoupment. Recovery can be obtained only if the conditions specified in K.R.S. 341.415(1) are satisfied. The statute is clear and unambiguous. The conditions are explicit. The Court of Appeals correctly determined that the statute does not authorize recoupment of unemployment insurance benefits in this situation.

Unemployment compensation is social legislation adopted into statutory law designed to afford protection to those workers who become unemployed through no fault of their own. K.R.S. 341.415(1) is very specific and the application of legal and equitable principles such as unjust enrichment and restitution are not available here. The clear and unambiguous language of the statute in question determines its meaning and no other analysis is required. The words are decisive and are clear. We have a responsibility to give the words of a statute their literal meaning unless to do so would produce an absurd or wholly unreasonable conclusion. Here, giving the words of the statute their plain meaning and adding no exceptions, neither leads to an absurd result or to a wholly unreasonable conclusion. *Bailey v. Reeves*, Ky., 662 S.W.2d 832 (1984). As has been observed earlier, the legislation in question

is social in nature and can be interpreted to produce maximum benefit to the beneficiaries.

Courts in other states have decided the question presented in this action in favor of the recipient of unemployment insurance benefits from whom recoupment is sought. *See Texas Employment Commission v. Oliver,* 691 S.W.2d 819 (Tex.App.1985); *Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911 (Iowa, 1979); *Messersmith v. Board of Review of the Industrial Com. of Utah,* 722 P.2d 759 (Utah, 1986) and *Waters v. State of Maryland,* 220 Md. 337, 152 A.2d 811 (1959). In these cases, recipients of unemployment benefits obtained reinstatement with back pay upon resolution of an NLRB grievance proceeding resulting from discharges. Generally, the courts held that in the absence of proof establishing that the recipient misled or withheld information from agency officials, a subsequent award of back pay did not warrant recoupment of unemployment insurance benefits previously paid to eligible recipients. The statute interpreted in *Oliver, supra,* is very similar to K.R.S. 341.415(1). The Texas court denied recoupment of benefits paid to an employee who was later reinstated with back pay.

The authorities from other states cited by Gatliff and the Commission are unpersuasive. The Commission and Gatliff rely on decisions of courts in other states and seek the exercise of equity power because K.R.S. 341.415(1) clearly does not authorize recoupment of benefits from these employees. The Kentucky statute authorizes recovery only if an employee received benefits while he was disqualified from receiving benefits. Clearly that did not occur in this case and accordingly, K.R.S. 341.415(1) prevents any recoupment.

Even if the receipt of benefit payments from Gatliff in 1987 could be regarded as an event that retroactively disqualified the employees from the receipt of unemployment payments in 1982 and 1983, the statutes would not authorize the recovery of those benefits. The last sentence of K.R.S. 341.415(1) provides that unless there has been a false statement, misrepresentation or concealment of material information by a recipient of benefits, there shall be no recoupment or recovery of an improperly paid benefit if the benefit was paid as a result of departmental error. That sentence was correctly interpreted by the Court of Appeals in *Kentucky Unemployment Ins. Com. v. Murphy,* Ky.App., 714 S.W.2d 488 (1986), to the effect that an unemployed claimant who received benefits ought not to be put to the additional hardship of repaying money which had already been expended in good faith to support himself and his family.

In this case there is absolutely no contention that the employees obtained benefits through false or misleading statements or the concealment of any material information. Consequently, even if the events of 1987 made the unemployment benefits paid to the employees in 1982 and 1983 an improperly paid benefit, then the benefit was paid as a result of a departmental error and is not subject to recoupment.

There is no double recovery because unemployment benefits are intended to provide relatively short term assistance to the unemployed while back wage payments are the result of a judgment following a litigated employment contract. The employees were not unjustly enriched by the receipt of both unemployment benefits and back pay. The payments to the employees were not made to discharge any liability but to carry out the policy of social benefit for the entire state. No consideration has been or should be given to collateral losses to reimburse the employees for lost earnings and the ordering of both benefits does not make the employees more than "whole" as that phrase has been understood and applied. *Cf. NLRB v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). It is not disputed that the employees were placed in serious financial distress as a result of the unemployment that began in December 1982. The receipt of unemployment benefits in 1982 and the ultimate satisfaction of the federal court judgment by Gatliff in 1987 was only a partial resolution of the financial needs of the employees. Neither the employer nor the Commission argues that the existing record indicates

that any employee received more than was necessary to support his family during that five-year period. The employees are life-long coal miners residing in an area where the coal industry has been economically depressed.

If the employers or the Commission seek to have a change in the existing law, then the statute should be changed by the General Assembly so that the claimed unjust enrichment or double recovery would be specifically prohibited by statute. That is not the case now.

The decision of the Court of Appeals is affirmed.

LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

SPAIN, J., dissents with a separate opinion in which STEPHENS, C.J., and COMBS, J., join.

SPAIN, Justice, dissenting.

I respectfully dissent and would affirm the Kentucky Unemployment Insurance Commission (KUIC) and the Whitley Circuit Court, rather than the Court of Appeals. Thus, I would require the appellee-employees of Gatliff Coal Company to repay to KUIC the unemployment insurance benefits which they received for the period during their temporary layoff and for which they later received back wages and other benefits in full.

This result, in my opinion, is compelled when one considers the clear purpose for which the legislature enacted KRS 341.350, providing some measure of financial relief for those who become unemployed through no fault of their own. Likewise, the recoupment provisions in KRS 341.415 plainly contemplate that "double dipping" defeats the purpose of the statute by unjustly enriching some recipients at the ultimate expense of either the taxpayers or other eligible recipients for whom no funds may then be available.

KRS 341.415(1) states

Any person who has received any sum as benefits under this chapter while any condition for the receipt of such benefits

was not fulfilled in his case ... shall, in the discretion of the secretary ... repay the department for the fund a sum equal to the amount so received by him....

Concededly, at the time the appellee-employees were paid benefits they were eligible therefor by reason of their having been laid off. However, once the arbitration award established that the layoff was illegal and null and void, it was as if said employees had had no interruption in employment, thus resulting in restoration of all their backpay, pension, and medical benefits for the entire period. At that point it became obvious as a matter of fact, that said employees had received benefits for a period of time during which they were not really unemployed after all. Thus, in retrospect, a "condition for the receipt of such benefits was not fulfilled" and, accordingly, repayment was required. This Court so held in *Kentucky Unemployment Insurance Commission v. General Electric Company*, Ky., 473 S.W.2d 808 (1971), wherein certain employees received unemployment benefits during the time their plant was shut down. After operations resumed, they later received vacation pay from G.E. retroactively for that period. We found not only that recoupment was proper but that "the Commission ... will be *required* to proceed under KRS 341.415 upon its having been determined that the workers were not entitled to the benefits that were given them." *Id.* at 810. (Emphasis added.)

If vacation pay recipients were not entitled to keep unemployment benefits due to a *subsequent* determination of ineligibility, then why should the appellee-employees in this case, who have received their backpay in full, be entitled to keep their unemployment benefits?

Recoupment is strongly favored in backpay situations such as this one, in part because the state fund must be maintained in order to continue providing needy unemployed workers with financial assistance. Depletion of the fund by paying benefits to those who subsequently receive their back wages in full and consequently no longer need assistance from the state is contrary to that purpose.

Such recoupment of unemployment benefits from employees who subsequently receive backpay has been upheld in a number of our sister states. In *Meyers v. Director of Employment Security*, 341 Mass. 79, 167 N.E.2d 160 (1960), an arbitrator had awarded employees backpay to make them whole for wages lost. In sanctioning recoupment of unemployment benefits, the Supreme Judicial Court of Massachusetts found that the purpose of such an arbitration award is to compensate an employee for actual loss of income and is "not a fine, penalty, or damages." *See also Frost v. Review Board of Ind. Employment Sec. Div.*, 432 N.E.2d 459 (Ind.App.1982); *Griggs v. Sands*, 526 S.W.2d 441 (Tenn. 1975); *In re Skutnik*, 51 N.Y.S.2d 711, 268 A.D. 357 (1944); *Caldwell v. Div. of Unemployment and Disability Ins. of Dept. of State of New Jersey*, 145 N.J.Super. 206, 367 A.2d 442 (1976); *Halabi v. Administrator, Unemployment Compensation Act*, 171 Conn. 316, 370 A.2d 938 (1976); *Arizona Department of Economic Sec. v. Lidback*, 26 Ariz.App. 143, 546 P.2d 1152 (1976). Furthermore, the United States Supreme Court in *National Labor Relations Board v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), recognized that recoupment in a backpay situation such as the case at hand is a matter between the state and the employees. The Supreme Court specifically noted in *Nash v. Fla. Indus. Commission*, 389 U.S. 235, 239, 88 S.Ct. 362, 366, 19 L.Ed.2d 438 (1976), that "... a State is free to recoup compensation payments made during any period covered by a back-pay award."

For the foregoing reasons, I would permit recoupment by KUIC of the unemployment benefits paid to the appellee-employees, thus preventing their windfall double recovery which defeats both the purpose of the backpay award and the purpose of our unemployment benefits statute.

STEPHENS, C.J., and COMBS, J., join in this dissent.