McRAE, Justice,
for the Court:
Appellants bring this appeal against the Mississippi Employment Security Commis *1139 sion (hereinafter the “Commission”) and the appellants’ employer, Johnston-Tombigbee Furniture Manufacturing Co., Inc. (hereinafter “Johnston-Tombigbee”). The Lowndes County Circuit Court affirmed the Commission’s finding that, as a result of a monetary settlement of unfair labor practice charges before the National Labor Relations Board, unemployment benefits paid to appellants during a strike could be recouped by the Commission pursuant to statute. Six of the appellants’ claims were denied on the basis of their failure to submit a timely appeal of the initial determination. The appellants presented six arguments on appeal, and one such argument is that the Commission’s re-coupment of unemployment compensation benefits was inappropriate and totally devoid of statutory authority. We find this particular issue meritorious and reverse and render on this issue alone. All other issues raised before this Court are without merit. Therefore, we find that the Commission is without authority to recoup payments from Frankie Jones and the others who timely filed then-appeals from the Commission’s determination.[1] At best, the Commission may have a claim against the employer. Accordingly, we reverse and hold all employees who timely filed an appeal are entitled to the unemployment compensation benefits they received.
STATEMENT OF THE FACTS
Johnston-Tombigbee employees have been represented by various unions since approximately 1973. In April, 1984, certain actions taken by Johnston-Tombigbee caused the union to call an unfair labor practice strike and to file charges with the National Labor Relations Board (hereinafter the “NLRB”). Thereafter, several formal complaints were issued by the NLRB and later consolidated.
On August 8, 1984, the striking employees made an unconditional offer to return to work. When Johnston-Tombigbee failed to reinstate all the striking workers to their former positions, further charges were filed by the union with the NLRB. A trial of all charges was scheduled for October 15, 1984.
At the October trial, a settlement was negotiated which resolved all outstanding charges against Johnston-Tombigbee. The settlement provided that (1) Johnston-Tom-bigbee would agree to reinstate all former striking employees who made an unconditional offer to return to work, (2) all employees not reinstated as of the date of their unconditional offer to return would be awarded twenty-five percent (25%) of the total back pay for the period beginning with their unconditional offer to return and ending with their reinstatement, (3) the twenty-five percent (25%) payment would not be considered an offset for unemployment benefits, (4) the company and the union would agree to accept the NLRB Regional Director’s computation of payments, and (5) the union would withdraw all charges against the company and the company would drop any appeal concerning charges against the union.
The striking employees made their unconditional offers to return to work on August 8, 1984. As a result of Johnston-Tombigbee’s failure to reinstate the employees to their former positions, these employees became eligible for unemployment compensation benefits. Johnston-Tombigbee reinstated employees as positions became available rather than based on the date of their unconditional offer to return.
With a couple of exceptions, all employees were reinstated before October 15, 1984. For the majority of the employees, the settlement of the NLRB charges occurred after the termination of their unemployment compensation benefits. No employees were aware of the settlement at the time they filed for unemployment benefits.
The payment of the settlement to the employees was made during August, 1985. In September, 1985, Johnston-Tombigbee furnished the Commission with information on the payments made. On September 11,1985, the Commission made a demand for restitution. of the alleged overpayments of unemployment benefits. Of those notified, forty-four of the appellants filed timely appeals. Six appellants filed appeals which were subsequently determined to be untimely.
*1140 The appeals referee upheld the demand for restitution. On December 5, 1985, the Commission denied the appeal of the six determined to have untimely filed their appeal. Thereafter, on January 16, 1986, the Commission conducted a hearing as to all other appellants and affirmed the decision of the appeals referee. When brought before the Lowndes County Circuit Court, the lower court affirmed both decisions of the Commission.
DISCUSSION OF THE LAW
The Commission’s recoupment of unemployment compensation benefits was without authority of law.
The Commission argues that it has the right to recover benefits paid pursuant to Miss.Code Ann. § 71-5-19(4) and § 71-5-517 (Supp.1984). The circuit court noted that the two sections construed together implicitly provide the authority for the Commission to recoup benefit payments. Mississippi Code Ann. § 71-5-19(4) (Supp.1984) provides:
(4) Any person who, by reason of the nondisclosure or misrepresentation by him or by another of a material fact, irrespective of whether such nondisclosure or misrepresentation was known or fraudulent, or who, for any other reason has received any such benefits under this chapter, while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the commission, either be hable to have such sum deducted from any future benefits payable to him under this chapter or shall be hable to repay to the commission for unemployment compensation fund a sum equal to the amount so received by him ...
Mississippi Code Ann. § 71-5-517 provides that any benefits “finally determined to have been erroneously paid shah be set up as an overpayment to the claimant and must be liquidated before any future benefits can be paid to the claimant.” In reaching this point, the statute speaks of an initial determination, an amended initial determination and the continuing jurisdiction of the Commission throughout the appeal process from these determinations. The statute also provides:
If, subsequent to such initial determination or amended initial determination, benefits with respect to any week for which a claim has been filed are denied for reasons other than matters included in the initial determination or amended initial determination, the claimant shall be promptly notified of the denial and the reason therefor and may appeal therefrom in accordance with the procedure herein described ...
Id.
The Lowndes County Circuit Court noted that these two section construed together implicitly provide that payments must be liquidated and that the Commission has the authority to recoup. The lower court considered that a different interpretation would have resulted in unjust enrichment, a result which the legislation was not presumed to have intended.
However, the circuit court’s finding that authority for the Commission’s recoupment of benefits paid to the appellants may be implied from construing together Miss.Code Ann. § 71-5-19(4) and § 71-5-517 is erroneous. A clear reading of these statutes provides no such interpretation, implicit or explicit. Because the settlement agreement between the employer and the employees included a binding contract wherein the employees would receive twenty-five percent (25%) of their lost pay, not subject to offset for unemployment benefits received, the Commission cannot recover from Jones and the other claimants. Moreover, there is no evidence that any of the employees committed a fraud, misrepresented or failed to disclose any material facts, or otherwise were disqualified or ineligible to receive benefits during any of the weeks they received unemployment checks. The Commission, therefore, is without authority to recoup payments from Jones and the others who timely filed their appeals.
Miss.Code Ann. § 71-5-19(4) (Supp.1984), approved by the legislature in 1977, provides penalties for wrongfully obtaining unemployment benefits as follows:
(4) Any person who, by reason of the nondisclosure or misrepresentation by him *1141 or another of a material fact, irrespective of whether such nondisclosure or misrepresentation was known or fraudulent, has received any such benefits under this chapter, while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the commission, either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the commission for the unemployment compensation fund a sum equal to the amount so received by him....
In Waters v. State, 220 Md. 337, 152 A.2d 811, 818-19 (1959), the Maryland court determined that the language of an identically-worded statute provided for recoupment of overpayments only on an “exclusive and limited basis,” that is, where there had been “a nondisclosure or a material representation of a material fact resulting in the payment of benefits.” Thus, it denied the Maryland Unemployment Insurance Fund’s effort to recover as “overpayments” benefits paid out in the amount of back pay a claimant later was awarded as part of a collective bargaining agreement. In 1960, the Maryland legislature repealed the statute in question, identical to our own, and replaced it -with broader language and specific provisions for recoupment, which, in relevant part, read as follows:
When any person has received any sum for benefits for which he is found by the Executive Director to have been ineligible, the amount thereof may be recovered from benefits payable to him ... Such sums may be recouped by either of these methods provided that whenever the Executive Director decides that any sum received by the claimant shall be recouped, either because he has received or has been retroactively awarded wages, was not employed as that term is defined in this article, or was disqualified or otherwise ineligible for such benefits, he shall promptly notify the claimant of his decisions and the reasons therefor....
Maryland Code Ann. art. 95A, § 17(d) (Repl. Vol.1979), quoted in Katsianos v. Maryland Employment Security Administration, 42 Md.App. 688, 402 A.2d 144, 147 (1979). The Mississippi legislature, however, has not elected to so expand the controlling statute, Miss.Code Ann. § 71-5-19(4).
In Texas Employment Commission v. Oliver, 691 S.W.2d 819 (Tex.App.1985), the Texas court was asked to determine whether a discharged postal employee was required to repay benefits to the Texas Employment Commission after he was later reinstated and awarded back pay. Construing Tex.Rev. Stat.Ann. Art. 5221b-14(d) (1971), which employs language identical to Miss.Code Ann. § 71-5-19(4), the court found that recoupment was not proper where the claimant had neither misrepresented himself nor failed to disclose any material facts. Id. The Oliver court explained:
The clear intent of the legislature in enacting subsection (d) of the statute was to permit recoupment by the TEC where a nondisclosure or misrepresentation is made. This is so whether or not the nondisclosure or misrepresentation was intentional. To allow an employee to receive both wages and unemployment compensation for the same time period is basically an unjust enrichment and should not be permitted. However, the statute does not specifically permit the TEC to recover expended funds under the facts of the instant case, and we are not permitted to enlarge, or place a strained construction on, the powers of the recoupment authority set forth the statute.
Id. at 822. The court cautioned, however, that:
The matter of recoupment from a person who was qualified for unemployment benefits and received those benefits, but later received back pay covering the unemployment time period should be addressed by the legislature. The practice of what has been alluded to as “double dipping” should neither be permitted nor condoned. As it stands, however, the statute does not permit recoupment in such a situation.

Id.

The Kentucky courts, in contrast, have rejected the notion that receipt of both unemployment benefits and a later award of back pay amounts to double dipping or a *1142 windfall for the claimant. In Gatliff Coal Co. v. Anderson, 814 S.W.2d 564, 566 (Ky.1991), finding that the Unemployment Commission was not entitled to recoup benefits paid to coal miners who were awarded back pay as a result of a settlement some five years after certain mining operations were shut down, the Kentucky court explained:
There is no double recovery because employment benefits are intended to provide relatively short term assistance to the unemployed while back wage payments are the result of a judgment following a litigated employment contract. The employees were not unjustly enriched by the receipt of both unemployment benefits and back pay. The payments to the employees were not made to discharge any.liability but to carry out the policy of social benefit for the entire state. No consideration has been or should be given to collateral losses to reimburse the employees for lost earnings and the ordering of both benefits does not make the employees more than “whole” as that phrase has been understood and applied. Cf. N.L.R.B. v. Gullett Gin Co., 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). It is not disputed that the employees were placed in serious financial distress as a result of the unemployment that began in December 1982. The receipt of unemployment in 1982 and the ultimate satisfaction of the federal court judgment by Gatliff in 1987 was only a partial resolution of the financial needs of the employees. Neither the employer nor the Commission argues that the existing record indicates that any employee received more than was necessary to support his family during that five-year period. The employees are life-long coal miners residing in an area where the coal industry has been economically depressed.
If the employers or the Commission seek to have a change in the existing law, then the statute should be changed by the General Assembly so that the claimed unjust enrichment or double recovery would be specifically prohibited by statute. That is not the case now.
See also, Kentucky Unemployment Insurance Comm. v. Murphy, 714 S.W.2d 488 (Ky.Ct.App.1986). In the case sub judice, Frankie Jones and his fellow employees can hardly be said to have “double-dipped” or to have received a windfall upon receipt of twenty-five percent of their back pay one year after their unconditional offer to return to work. Unemployment insurance may pay for groceries, but cannot be expected to cover all household expenses. Thus, the twenty-five percent back pay settlement award may have served as compensation for lost use of that income, interest, late fees and penalties on accumulated or delayed bills and debts, and other financial burdens incident to a period of unemployment.
The Kentucky statute at issue in Gatliff, Ky.Rev.Stat.Ann. § 341.415(1), apparently similar to that construed in Oliver, and thus, not unlike our own § 71-5-19(4), permits re-coupment when “ ‘[a]ny condition for the receipt of such benefits was not fulfilled,’” when the claimant received benefits while disqualified from receiving them, and where “ ‘[tjhere has been a false statement, misrepresentation or concealment of material benefits.’ ” Gatliff 814 S.W.2d 564 at 565, quoting § 341.415(1). Like the decisions in Oliver and Waters, the Gatliff court found that the claimants, who ultimately were awarded back pay in 1987, had not made any misrepresentations or concealments of material fact when they applied for unemployment benefits when they were laid off in 1982. Gatliff, 814 S.W.2d at 565. Thus the court found that “even if the events of 1987 made the unemployment benefits paid to the employees in 1982 and 1983 an improperly paid benefit, then the benefit was paid as the result of a departmental error and is not subject to recoupment.” Id. at 566.
We have held that “when called upon to apply statutes to specific factual situations, we apply the statutes literally according to their plain meaning.” Brown v. Hartford Insurance Co., 606 So.2d 122, 124 (Miss. 1992). Further, we attempt to give a statute “that reading which best fits the legislative language and is most consistent with the best statement of policies and principles justifying that language.” Gentry v. Wallace, 606 So.2d 1117, 1122 (Miss.1992); Warren County v. Culkin, 497 So.2d 433, 436 (Miss.1986). *1143 See also Marx v. Broom, 632 So.2d 1315, 1318 (Miss.1994).
The plain language of Miss. Code Ann. § 71-5-19(4) provides a penalty for a claimant who has misrepresented or failed to disclose a material fact, or who has received benefits without fulfilling any of the requisite conditions or while disqualified from receiving them. There is no evidence in the record that any of the claimants herein misrepresented or failed to disclose any material facts relevant to their unemployment, received any benefits while conditions of receipt were unmet, or otherwise were disqualified from receiving benefits. In light of the evidence or lack thereof, the plain language of § 71-5-19(4) provides no basis for the recoupment of unemployment benefits paid to Jones and the other employees. Even when read together with Miss.Code Ann. § 71-5-517 (1989), the statutes fail to provide even an implicit basis for recoupment. Mississippi Code Ann. Section 71-5-517, which governs initial determination of benefits by the Commission, provides for “overpayments” to be “liquidated”[2] as follows:
Any benefits finally determined to have been erroneously paid shall be set up as an overpayment to the claimant and must be liquidated before any future benefits can be paid to the claimant. If, subsequent to such initial determination or amended initial determination, benefits with respect to any week for which a claim has been filed are denied for reasons other than matters included in the initial determination, the claimant shall be promptly notified of the denial and the reason therefor and may appeal therefrom in accordance with the procedure herein described....
Just as § 71-5-19(4) speaks to repayment as a penalty for wrongfully obtaining benefits, § 71-5-517 addresses those situations where benefits have been paid erroneously. Again, there is no evidence that the benefits paid to Jones and the other employees were miscalculated or made in error. As previously noted, settlement of the NLRB charges occurred only after most employees’ unemployment benefits had terminated.
Absent any evidence of wrongdoing or misrepresentation by the claimants, §§ 71-5-19(4) and 71-5-517 provide no basis, implicit or explicit, for recoupment by the Commission of unemployment benefits paid during the strike to Jones and other employees of the Johnson Tombigbee Furniture Manufacturing Company. Accordingly, this ease is reversed, and it is held that the Commission is without authority to recoup payments from the appellants. This case remanded to the Commission for full implementation consistent with this opinion.
REVERSED AND REMANDED TO THE COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.

. We make no determination regarding those six claimants who failed to timely file appeals of the initial determination. See Marx v. Broom, 632 So.2d 1315, 1322 (Miss.l994).

. "Liquidated" is defined variously as "Ascertained; determined; fixed; settled; made clear or manifest. Cleared away; paid; discharged. Adjusted, certain or settled. Black’s Law Dictionary 838 (5th ed. 1979).