## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60229

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2018

Lyle W. Cayce
Clerk

VOLVO FINANCIAL SERVICES, a division of VFS US, L.L.C.,

> Plaintiff - Appellee

v.

ELVIS WILLIAMSON,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's award of a deficiency judgment in the amount of $296,956.62, plus interest, costs, and attorney's fees, to Volvo Financial Services.  Volvo sued Elvis Williamson for breach of contract after he defaulted on payments under eight separate promissory notes.  The district court granted summary judgment in favor of Volvo.  Williamson now appeals.

**I**[1]

Elvis Williamson purchased eight commercial trucks from Volvo Financial Services, a division of VFS US, L.L.C. (Volvo), between April 2014

---

[1] The parties do not dispute the facts giving rise to this action.

No. 18-60229

and June 2015. Williamson and Volvo executed a separate "Secured Promissory Note" (Note) for each of the eight trucks, and each Note listed an individual truck as collateral for the monetary amount listed therein. Each Note contained the same customer contract number, and each was executed on a different date. Additionally, each Note contained the same cross-collateralization clause, which stated the following:

> Security Interest: In order to secure (i) payment of the Indebtedness, all other debts and obligations at any time owed by Borrower to Lender or its affiliates, and (ii) complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into, Borrower hereby grants to Lender a security interest in and to the equipment described above (the "Equipment"), together with all present and future attachments . . . "Loan Documents" means this Note; all other loans made by, or other obligations of Borrower to Lender or any affiliate of Lender . . . and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note, as any or all of such documents may be executed or amended from time to time.

Moreover, all of the Notes provided that an "Event of Default" would occur, inter alia, by the ". . . [f]ailure by any Loan Party to pay when due (i) any amount due under any of the Loan Documents."

Williamson defaulted under the terms of the Notes, and Volvo sent Williamson several notices of sale for the trucks. Volvo thereafter took possession of and sold the trucks listed in Notes 001–004 in February 2016 and Note 005 in November 2016. With respect to Note 006, Volvo received insurance proceeds for the truck listed therein, which suffered a total loss, on June 29, 2016. Volvo subsequently repossessed the trucks listed in Notes 007 and 008 and sold them on March 17, 2017. Thereafter, Volvo sent Williamson eight separate demand letters listing the deficiency balance it claimed Williamson still owed on each truck after its sale.

2

No. 18-60229

Volvo filed this action against Williamson on April 10, 2017, alleging breach of contract and seeking to recover the outstanding deficiency amounts remaining due under the Notes. In August 2017, Volvo moved for summary judgment. Williamson also moved for partial summary judgment, seeking dismissal of Volvo's claims as to Notes 001, 002, 003, and 004 on the basis that they were barred by the one-year limitations period set forth in Mississippi Code § 15-1-23, as the Notes were secured by trucks sold in February 2016, over a year before Volvo filed suit. In October 2017, the district court filed a Memorandum Opinion and Order addressing both motions. The district court denied Williamson's motion, concluding that the statute of limitations did not bar Volvo's claims as to Notes 001, 002, 003, and 004. Finding no material fact disputes, the district court granted Volvo's motion for summary judgment and entered a judgment in favor of Volvo in the amount of $268,956.62 as well as interest, costs, and attorney's fees. Williamson then moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), asserting for the first time that each of Volvo's deficiency claims accrued upon the sale of each vehicle pursuant to Mississippi Code § 75-9-615(d)(1) and (d)(2), § 75-9-616 (a) and (c), and § 75-9-617(a). The district court denied the motion. The district court then awarded Volvo attorney's fees and expenses in the amount of $21,435 and $965.53, respectively. Williamson timely appealed.

## II

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court. *See Gen. Universal Sys. v. HAL Inc.,* 500 F.3d 444, 448 (5th Cir. 2007). Summary judgment is appropriate where the moving party "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting FED. R. CIV. P. 56(c)). We review a district court's decision on a

3

No. 18-60229

Rule 59(e) motion to alter or amend the judgment for abuse of discretion. *See Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Ross v. Marshall,* 426 F.3d 745, 763 (5th Cir. 2005). However, we review de novo issues that are pure questions of law. *See Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 405 (5th Cir. 2002) (citing *Fletcher v. Apfel,* 210 F.3d 510, 512 (5th Cir. 2000)). Because the basis of the district court's jurisdiction was diversity of citizenship,[2] "we apply federal procedural and evidentiary rules, and the substantive laws of the forum state," which, here, is Mississippi. *See Huss v. Gayden,* 571 F.3d 442, 449–50 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). Accordingly, we apply the statute of limitations that Mississippi would apply.[3] *See id.* at 450 (5th Cir. 2009) (citing *Guar. Trust Co. v. York,* 326 U.S. 99, 109–10 (1945)).

### III

Williamson challenges the district court's denial of his summary judgment and Rule 59(e) motions, arguing that the court's interpretation and application of Mississippi Code § 15-1-23 was error. Section 15-1-23, which governs actions on installment notes by the foreclosing party, provides:

> In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes of three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or

---

[2] There is complete diversity of citizenship because Williamson is a citizen of Mississippi, Volvo is a citizen of North Carolina and Delaware, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

[3] Each Note contains a choice of law provision stating that it "shall be governed by the substantive (and not choice of law or conflicts) laws of the State of North Carolina." Accordingly, in this diversity case, North Carolina's substantive law and Mississippi's procedural law applies. Because Mississippi classifies statutes of limitations as procedural for choice of law purposes, we look to Mississippi's statutes of limitations. *See Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006).

No. 18-60229

personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes.

MISS. CODE ANN. § 15-1-23 (2018). The parties agree that the one-year limitations period set forth in § 15-1-23 applies to the Notes. However, they disagree as to the effect of the cross-collateralization clause on the statute's operation. Williamson urges that each individual Note should be considered separately subject to § 15-1-23, such that the one-year limitations period began to run with respect to a particular Note when the property listed therein was sold. By contrast, Volvo contends that, because the cross-collateralization clause operated to ensure that all eight Notes were secured by all eight trucks, the one-year limitations period began only after Volvo sold all the trucks. For the reasons described below, we AFFIRM.

## A

The district court denied Williamson's partial summary judgment motion on the basis that § 15-1-23 did not bar Volvo from bringing deficiency claims on Notes 001–004. The court concluded that, due to the cross-collateralization clause, the eight Notes operated as one Note secured by eight trucks. The court noted that there were no Mississippi cases applying § 15-1-23 to a note containing a cross-collateralization clause like the one at issue here, and thus existing state law precedent did not answer whether a partial sale of a security triggers the statute of limitations. The district court therefore made an *Erie* guess as to how the Mississippi Supreme Court would interpret § 15-1-23 to resolve the issue if presented with the same question. *See Erie R. Co.*, 304 U.S. at 64.

First, the district court concluded that § 15-1-23 was ambiguous because, under the statute, the event triggering the one-year limitations period, the "date of the foreclosure or sale of the property pledged as security for said note or notes," could be construed to refer to one or all property items pledged as

5

security for a note.    Then, applying Mississippi principles of statutory construction, the district court considered the statute's purpose and considered the most reasonable interpretation of § 15-1-23 when applied to the facts of the case.    The district court ultimately concluded that the sale of all trucks triggered the statute of limitations under § 15-1-23, and that all of Volvo's deficiency claims were therefore timely.    We believe the district court's application of Mississippi principles of statutory construction to resolve the ambiguity of § 15-1-23 was correct.

"To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (quoting *Westlake Petrochems., LLC v. United Polychem, Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012)).    "In making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." *Johnston & Johnston*, 732 F.3d at 562 (quoting *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013)).

Under Mississippi principles of statutory construction, a court must first decide whether a "statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction." *City of Natchez, Miss. v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992).    However, if the statute is ambiguous, a court must give the statute the "reading which best fits the legislative language and is most consistent with the best statement of policies and principles justifying that language." *Chandler v. City of Jackson Civil Serv. Comm'n*, 687 So. 2d 142, 144 (Miss. 1997) (quoting *Jones v. Miss. Sec. Comm'n*, 648 So. 2d 1138, 1142 (Miss. 1995)).    In other words, a court must "carefully review [the] statutory language and apply its most reasonable interpretation and meaning

to the facts of a particular case." *Caldwell v. N. Mississippi Med. Ctr., Inc.*, 956 So. 2d 888, 891 (Miss. 2007) (quoting *Pope v. Brock*, 912 So. 2d 935, 937 (Miss. 2005)).  In so doing, the court should consider "all possible repercussions and consequences of the construction." *Chandler*, 687 So. 2d at 144–45 (citing *Allred v. Webb,* 641 So. 2d 1218, 1222 (Miss. 1994)).

We conclude that § 15-1-23 is ambiguous with respect to whether the one-year limitations period is triggered by the sale of only some property securing a note, or instead whether all property securing a note must be sold for the limitations period to begin.  Accordingly, we proceed to examine the most reasonable interpretation of the statute as applied to the facts of this case.  In interpreting § 15-1-23, the Supreme Court of Mississippi has relied on its purpose and title.  *See Lewis v. Simpson*, 167 So. 780, 781 (Miss. 1936).  The court has explained that the statute, which provides a one-year limitations period from foreclosure for the foreclosing party to bring suit, was enacted with the purpose of "discourag[ing] the foreclosure of mortgages during the depression period."[4]  *See id.*  The court also examined the title of the statute as an interpretive tool.  *See id.*  Although *Lewis* dealt with the separate issue of whether the one-year statute of limitations applied to both a senior mortgage holder who had foreclosed and a junior mortgage holder who had not foreclosed, the court's analysis of the statute's purpose and title is applicable here.  *See id.* at 781; *Hubbard v. BancorpSouth Bank*, 135 So. 3d 882, 886 (Miss. 2014) (noting that changes that occurred when the statute was codified had no effect

---

[4] Presumably, the statute serves to discourage foreclosures because a longer statute of limitations could apply if a note is secured by a mortgage that has not been foreclosed.  *See Rankin Cty. Bank v. McKinion,* 531 So. 2d 822, 824 (Miss. 1988) ("Other promissory notes which are to be paid in installments but which are not secured by mortgages which have been foreclosed have been considered by this Court to fall under the six-year statute of limitation which begins to run as to each installment from the time that it falls due." (citing *Freeman v. Truitt,* 119 So. 2d 765 (1960)).

on the statute's title or the substantive language upon which the *Lewis* court relied).

The statute is entitled "An Act to fix the period of limitation within which suits may be brought on notes secured by mortgages, trust deeds, or otherwise, where such mortgages have been foreclosed." *See Hubbard*, 135 So. 3d at 886; *Lewis*, 167 So. at 781. Accordingly, we believe the Mississippi legislature intended the statute be interpreted to minimize uncertainty by "fix[ing] the period of limitation within which suits may be brought." *See id.* As the district court noted, there is usually no uncertainty as to when the limitations period begins under § 15-1-23, because the usual mortgage foreclosure situation involves one piece of property secured by a single note. However, where there are multiple pieces of property securing a note, as here, foreclosure or sale of all the property could span or surpass the length of the one-year limitations period, requiring the foreclosing party to bring multiple actions. The sale of different property at different times could lead to a surplus in some instances and a deficit in others, potentially obviating the need for the foreclosing party to bring a deficiency action at all. In light of these considerations, we agree with the district court that the most reasonable interpretation of § 15-1-23, when applied to the facts of this case, is that the sale of all property securing a note must be complete to trigger the statute of limitations. This interpretation does not conflict with the statute's purpose of discouraging foreclosures and, in some instances, could even further it. By avoiding the mire of litigation concerning the partial foreclosure or sale of property securing a note, the defaulting party would have a chance to cure his default as to the rest of the property, thereby preventing a total foreclosure or sale.

No. 18-60229

Williamson contends that the district court erred by denying his summary judgment motion in two ways.[5]  First, he claims that the district court failed to consider the effect of § 15-1-23's phrase "series of notes of three or more."  Next, he claims that the district court failed to consider the impact of Mississippi Code § 15-1-5, which he argues voids any attempt to change the one-year limitations period set forth in § 15-1-23.  We examine each of Williamson's arguments in turn.

Williamson contends that the district court erred by construing all eight Notes together as a single indebtedness, rather than separately as eight individual debts, in light of § 15-1-23's phrase, "series of notes of three or more," as interpreted by the Supreme Court of Mississippi in *Peoples Bank & Tr. Co. v. Kinsey*.  In *Kinsey*, the court held that "the words 'series of notes' as employed in [§ 15-1-23], mean multiple notes given in a single transaction and for the same consideration, and without regard to their several maturity dates."  385 So. 2d 615, 617 (Miss. 1980).  According to Williamson, because the Notes here were executed at different times and for different consideration, under *Kinsey*, each Note should be considered as a separate installment note subject to a separate limitations period under § 15-1-23. We disagree.  Though Williamson is correct that the eight Notes at issue here are not a "series of notes" as contemplated by the statute, this is irrelevant given the effect of the cross-collateralization clause.  *See Rankin Cty. Bank v. McKinion*, 531 So. 2d 822, 824 (Miss. 1988) (finding a party's emphasis upon the meaning of "installment note" misplaced where the statute emphasized whether "notes secured by a

---

[5] For the first time on appeal, Williamson argues that under § 63-21-43(1) and (2), Volvo was required to specifically describe each vehicle as security to perfect a valid security interest.  He contends that, because the cross-collateralization clauses do not specifically describe any of the vehicles, they are not effective as an additional security agreement under § 63-21-43(1) and (2).  We decline to consider arguments that were not raised before the district court.  *See Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 451 n.8 (5th Cir. 2016).

mortgage or deed of trust [] have been foreclosed"). Because each Note was secured by all eight trucks, only the disposition of the last remaining truck would trigger the statute of limitations.

Next, Williamson asserts that Volvo's cross-collateralization clause violated Mississippi's prohibition on contracting around the applicable limitations period. Section 15-1-5 provides:

> The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.

MISS. CODE ANN. § 15-1-5 (2018). The Supreme Court of Mississippi has held that attempts to shorten or extend a statute of limitations are impermissible under § 15-1-5. *See Townes v. Rusty Ellis Builder, Inc.*, 98 So. 3d 1046 (Miss. 2012); *Pitts v. Watkins*, 905 So. 2d 553 (Miss. 2005). However, the issue here is *when* the statute of limitations is *triggered*—not whether the one-year limitations period in § 15-1-23 applies.[6]

The Supreme Court of Mississippi has also held that parties do not violate § 15-1-5 if they contract to establish the due date of an obligation, "from which time the statutory limitation commences." *See Anderson v. Lancaster*, 60 So. 2d. 595, 597 (Miss. 1952); *see also Freeman v. Truitt*, 119 So. 2d 765, 768 (Miss. 1960) (noting that "the right of the parties to establish the due date of the obligation is well settled") (internal citations omitted). In *Anderson*, the parties agreed to defer the due date and payment for professional services

---

[6] In *Pitts*, the court held that the parties' "attempt to create a private statute of limitations" by replacing the applicable three-year limitations period with a one-year limitations period was impermissible. *See* 905 So. 2d at 558. Similarly, in *Townes*, the court held that an agreement between the parties to toll a six-year statute of limitations, which had already begun to run, violated § 15-1-5. *See* 98 So. 3d at 1051–52.

rendered by a doctor until the appellant had paid his hospital bills. *See* 60 So. 2d. at 596. The court concluded that there was no legal obstacle to such an agreement to "fix the due date of an obligation" under § 15-1-5,[7] and that the statute of limitations "does not begin to run until the cause of such action has accrued." *Id.* (cleaned up). Though *Anderson*'s holding is not directly applicable here, we believe it is instructive. The issue in this case, whether the one-year limitations period begins to run after some or all of the property securing a note is sold, bears on when the cause of action accrues and is not an impermissible attempt to change the statute of limitations prohibited by § 15-1-5. Because we conclude that Volvo is entitled to summary judgment as a matter of law, we affirm.

## B

Next, we examine the district court's denial of Williamson's Rule 59(e) motion to alter or amend the judgment on the basis that the new legal authority he provided did not change its determination. In his motion, Williamson argued that pursuant to Mississippi Code § 75-9-615(d)(1) and (d)(2),[8] § 75-9-616(a) and (c),[9] and § 75-9-617(a),[10] the sale of the trucks listed

---

[7] *Anderson* referenced Mississippi Code § 724, which is now codified as § 15-1-5.

[8] Section 75-9-615 governs the application of proceeds of disposition, including liability for deficiencies and rights to surplus and, as relevant here, provides:

> (d) If the security interest under which a disposition is made secures payment or performance of an obligation, after making the payments and applications required by subsection (a) and permitted by subsection (c):
>> (1) Unless subsection (a)(4) requires the secured party to apply or pay over cash proceeds to a consignor, the secured party shall account to and pay a debtor for any surplus; and
>> (2) The obligor is liable for any deficiency.

MISS. CODE. ANN. § 75-9-615 (2018).

[9] Williamson does not adequately brief a claim with respect to Mississippi Code § 75-9-616 on appeal. Accordingly, he has abandoned any claim on this basis. *See Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011).

[10] Section § 75-9-617 governs the rights of transferees of collateral and provides, in relevant part:

> (a) A secured party's disposition of collateral after default:

No. 18-60229

in Notes 001–004 immediately triggered Volvo's entitlement to a deficiency as to those trucks, thereby rendering the cross-collateralization clause in Notes 005–008 ineffective.  In denying the motion, the district court reasoned that the new authority established that the sale of collateral discharged subordinate security interests, but Williamson had not provided any authority establishing that cross-collateralization created a subordinate security interest.  Williamson now contends that, under the clear terms of § 75-9-617(a)(2) and (3), it is irrelevant whether the cross-collateralization clause is a subordinate security interest, as the disposition of collateral discharges both security interests and subordinate security interests.  Because this is a purely legal issue, our review is de novo.  *See Tyler,* 304 F.3d at 405.

The language of § 75-9-617(a)(2) and (3) supports Williamson's argument that the disposition of collateral after default discharges both "the security interest under which the disposition is made" and "any subordinate security interest or other subordinate lien."  MISS. CODE ANN. § 75-9-617(a)(2), (3).  Even so, Williamson does not explain why the discharge of property listed as security in Notes 001–004 matters in light of the cross-collateralization clause in all Notes.  Although he argues that § 75-9-615 operates to terminate the cross-collateralization clause, it is unclear how this is so under the provision's terms.  Moreover, Williamson has not provided any legal authority in support of this interpretation of § 75-9-615.  Accordingly, we conclude that these

---

(1) Transfers to a transferee for value all of the debtor's rights in the collateral;
(2) Discharges the security interest under which the disposition is made; and
(3) Discharges any subordinate security interest or other subordinate lien. . . .

MISS. CODE ANN. § 75-9-617 (2018).

No. 18-60229

provisions of the Mississippi Code are not determinative here, and we affirm the district court's denial of Williamson's Rule 59(e) motion.

\*\*\*

For these reasons, we AFFIRM the district court's judgment.